[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
This appeal is taken from the Hancock County Court of Common Pleas judgment convicting and sentencing Defendant-Appellant Danny Caudill on two counts of possession of drugs, two counts of engaging in a pattern of corrupt activity, and two counts of funding drug or marijuana trafficking.
On April 26, 1997, a truck originating from McAllen, Texas and destined for Cherry's Farm Market in Ottawa, Ohio was stopped at a Kentucky weigh station. The truck contained sixty-five bundles of marijuana. An investigation began and thirty-eight participants in the "Ramirez drug enterprise" were identified. The drug enterprise consisted of transporting drugs from Texas to Ohio. Runners would drive to Texas in vehicles and the drugs would then be hidden in the secret compartments in the vehicles. Upon return to Ohio, the drugs were removed. Caudill then obtained marijuana and cocaine from Jesse Ramirez, Sr. to distribute.
From the information gained throughout the investigation, officers from the Multi Area Task Force and various counties arrested Caudill and several other members of the alleged enterprise on December 10, 1996.
Seven days later, the Hancock Grand Jury filed a six count indictment charging Caudill with two counts of engaging in a pattern of corrupt activity; two counts charging the possession of cocaine, both with major drug offender specifications; and two counts of funding of drug trafficking, one involving cocaine, the other involving marijuana.
Caudill pleaded not guilty and a jury trial began on July 8, 1997. At the close of the case, Caudill's indictment was amended to conform to the evidence. On July 16, 1997, the jury found Caudill guilty as charged in the amended indictment. Caudill was sentenced to seven to twenty-five years on Count One, concurrent with seven to twenty-five years on Count Two, consecutive to ten years on Count Three with an additional five years for the major drug offender specification, concurrent with ten years on Count Four with an additional five years for the major drug offender specification, consecutive to nine years on Count Five, concurrent with four years on Count Six. Caudill's sentence also assessed mandatory fines of $10,000 each on Counts Three, Four and Five and a mandatory fine of $5,000 on Count Six.
Caudill now asserts six assignments of error.
 ASSIGNMENT OF ERROR NO. I Danny Caudill was denied his statutory and state and federal constitutional rights to a speedy trial when his trial was continued beyond the speedy trial time limit of R.C. 2945.71 through 2945.73.
Caudill contends that he was not brought to trial in accordance with Ohio's speedy trial statutes and the failure to do so violated his statutory, state and federal constitutional rights to a speedy trial.
A person charged with a felony must be brought to trial within two hundred and seventy days after his arrest. R.C.2945.71(C)(2). Each day the accused is in jail in lieu of bail is counted as three days in computing time under this statute. R.C.2945.71(E). Caudill was incarcerated on December 10, 1996. Applying the triple-time calculation of R.C. 2945.71(E), Caudill should have been tried no later than March 10, 1997.[1]
Caudill, however, was not brought to trial until July 8, 1997, two hundred and ten days after the day of his arrest. Once a criminal defendant shows that he was not brought to trial within the permissible period, the accused presents a prima facie case for release. State v. Butcher (1986), 27 Ohio St.3d 28, 30-31. The State then has the burden to demonstrate that the criminal defendant was not entitled to release pursuant to tolling events contained in R.C. 2945.72. Id. It must be further pointed out that these tolling provisions are to be strictly construed against the State. State v. Singer (1977), 50 Ohio St.2d 103, 109.
The time within which the accused must be brought to trial may only be extended for the reasons stated in R.C. 2945.72. These reasons include any delay necessitated by a motion by the accused, any continuances granted on the accused's own motion, the period of any reasonable continuance granted other than upon the accused's own motion, and the period of delay occasioned by the neglect or improper act of the accused. R.C. 2945.72.
The tolling events set forth in R.C. 2945.72 "do not unconditionally extend the time limit in which an accused must be brought to trial, but, rather, this limit is `merely extended by the time necessary in light of the reason for the delay.'" Statev. Arrizola (1992), 79 Ohio App.3d 72, 75, quoting Committee Comment to H.B. 511. The extension of time to rule on a defendant's motion is subject to the requirements of reasonableness. Arrizola, 79 Ohio App.3d at 75-76, citing Statev. Martin (1978), 56 Ohio St.2d 289, 297 and State v. Branham
(Oct. 8, 1987), Paulding App. No. 11-85-9, unreported.
 In determining reasonableness of the time in which a trial court must rule on a motion, careful examination of the particular circumstances of the case must be made. The complexity of the facts and the difficulty of the legal issues to be resolved must be considered. A reviewing court must also be cognizant of the time constraints placed on a trial judge's schedule.
 Arrizola, 79 Ohio App.3d at 76.
R.C. 2945.73 provides further:
 (B) Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code.
In the present case, Caudill filed several motions. He filed a motion to continue bond, a request for discovery, a motion for a bill of particulars and an amended motion for a bill of particulars, a motion for request of prosecuting attorney to use evidence, two motions for bond reduction, a demand for copies of application for search warrants and affidavits supporting applications, a motion to compel discovery, a motion for sanctions, three motions in limine, a motion to dismiss, two motions for continuances, a motion for order prohibiting prosecutor from making false statements to co-defendants about Caudill, and a motion to consolidate counts.
First, we find that generally a request for discovery and a motion for a bill of particulars do not toll a defendant's speedy trial rights.[2] See State v. Chatman (Feb. 13, 1996), Marion App. No. 9-94-61, unreported; State v. Bowen (Aug. 16, 1991), Hancock App. No. 5-90-45, unreported. In Bowen, supra, we held that a motion for discovery is typically not chargeable to a defendant under R.C. 2945.72. Likewise, a motion for a bill of particulars does not require action on the part of the court and, therefore, does not generally cause a period of delay. State v.Spicer (May 8, 1998), Hamilton App. Nos. C-970480 and C-970454, unreported cf. State v. Grinnell (1996), 112 Ohio App.3d 124. Accordingly, we find that Caudill's request for discovery and his two motions for bills of particulars do not toll his speedy time period.
Second, we find that a motion for bond reduction tolls the speedy trial time period as the motion was made by the accused under R.C. 2945.72(E). See State v. Walters (Jan. 18, 1996), Cuyahoga App. No. 68279, unreported. Thus, the amount of time tolled is the reasonable amount of time necessitated by the motion. Arrizola, supra. Caudill field a motion for bond reduction on January 3, 1997. A hearing on the motion was held on January 23, 1997. On February 11, 1997, the motion was granted by the trial court and Caudill's bond was reduced.
We recognize that a trial court judge needs time for research, contemplation and deliberation before arriving at a decision; however, in the case at bar, the trial court took over thirty-five days to arrive at a decision which encompassed less than one page and was handled on a routine basis. Given that Caudill's speedy trial time period was ninety days, we find that the thirty-nine days between January 3, 1997 and February 11, 1997 to be excessive and unreasonable. There is nothing in the record to indicate a reason for this delay. Thus, Caudill cannot be charged with the full thirty-nine days it took the trial court to decide this motion. We do find that Caudill can properly be charged with only a reasonable period of time.
Third, a delay caused by a defense motion necessary to compel discovery generally "should not be assessed to the defendant inasmuch as such motions are presumably necessitated by the State's failure to comply with the original requests of the defendant for discovery." State v. Doucette (Jan. 6, 1992), Allen App. No. 1-91-16, unreported. On December 24, 1997, Caudill filed a request for discovery. Caudill filed a motion to compel discovery on January 7, 1997 and a motion for sanctions on January 15, 1997. The State provided discovery to Caudill on January 27, 1997, February 14, 1997, March 3, 1997, March 4, 1997, March 12, 1997, April 1, 1997, April 17, 1997, May 13, 1997, June 10, 1997, June 27, 1997, July 2, 1997, July 7, 1997, July 8, 1997, and July 10, 1997.
On March 6, 1997, the trial court heard arguments on several motions, including the motion to compel and motion for sanctions filed by Caudill.[3] At this hearing, the trial court stated that Caudill filed his motion to compel discovery seven days too early as it was not proper for the trial court to consider a motion to compel discovery until January 14, 1997. The trial court then stated that it did not hear from Caudill concerning this issue after January 14, 1997 and that the State provided Caudill with the first installment of discovery on January 27, 1997. The trial court overruled the motion for sanctions at the same hearing. Generally, we do not find that these motions when necessary toll speedy trial time; however, in this case, it does not appear from the record that the State failed to comply with any outstanding discovery requests when the motion to compel was filed as the trial court found that the motion was prematurely filed by seven days. On this record, we are not inclined to charge the entire delay occasioned by the motion to the State.
Fourth, motions in limine toll a defendant's speedy trial time. R.C. 2945.72(E); State v. Cochran (Aug. 26, 1994), Marion App. No. 9-94-8, unreported. Caudill filed a motion in limine on March 6, 1997. At a hearing the same day, Caudill stated he would withdraw the motion if it delayed his speedy trial rights. The trial court stated that it believed Caudill's speedy trial rights would not be violated because of other motions filed by Caudill. The trial court then scheduled a hearing for March 12, 1997. At the hearing, the State agreed not to use the piece of evidence in question in its case in chief and thus, the trial court did not need to rule on the motion in limine. As Caudill did not withdraw the motion in limine, we find that his speedy trial time was tolled for the reasonable period between March 6, 1997 and March 12, 1997.
Fifth, a motion to dismiss tolls the running of speedy trial rights. State v. Broughton (1991), 62 Ohio St.3d 253, 262. On March 17, 1997, Caudill filed a motion to dismiss premised on a violation of his speedy trial rights. The time tolled, however, is only the amount of time which is reasonable under the circumstances of the case. Arrizola, supra. The motion to dismiss was filed on March 17, 1997. A hearing on the motion was held on April 10, 1997. The court ordered a transcript of a previous hearing on April 16, 1997. The trial court overruled the motion to dismiss on May 13, 1997. Fifty-seven days passed between March 17, 1997 and May 13, 1997. Given the complexity and nature of the case, we find and Caudill concedes that his speedy trial time was tolled during this period.
Sixth, Caudill's motion for order prohibiting the prosecutor from making false statements to co-defendant's about him tolled his speedy trial rights as it was a motion by the accused under R.C. 2945.72(E). Caudill filed this motion on May 23, 1997 and the trial court denied this motion on June 3, 1997. Accordingly, Caudill's speedy trial time was tolled eleven days.
Seventh, a motion by the defendant for a continuance generally tolls the accused speedy trial rights. R.C. 2945.72(H). Caudill filed a motion for continuance on May 29, 1997. On June 2, 1997, Caudill's original rescheduled trial date, the court was closed. On June 3, 1997, the trial court asked Caudill directly if he wanted the continuance. Caudill responded in the affirmative. The trial court then rescheduled the trial for July 8, 1997 and taxed the time to Caudill.
Caudill asserts that this continuance was necessary to review late discovery from the State and that the continuance was necessitated by the State failing to provide the requested discovery. Thus, Caudill asserts that the continuance granted to him should not be tolled against him. Caudill relies on State v.Timson (May 25, 1989), Franklin App. No. 87AP-1212, unreported;State v. Boone (Apr. 10, 1989), Licking App. No. 3414, unreported; State v. Collins (Sept. 30, 1988), Butler App. No. 88-02-021, unreported; and State v. Cox (Apr. 1, 1987), Holmes App. CA-367, unreported. The State argues, however, that it provided voluminous and ongoing discovery.[4] Numerous co-defendants were indicted with Caudill and many of these individuals agreed to cooperate with the State and to testify against Caudill; thus, the State argues that it had to interview these individuals and then these statements were provided to Caudill. The State contends that it did not delay or keep discovery from Caudill and that the continuance should toll Caudill's speedy trial rights.
The following facts were presented at the June 3, 1997 hearing on Caudill's motion for a continuance. The State had provided its order of witnesses and order of exhibits to Caudill on May 23, 1997. At the time of the hearing, Caudill was still awaiting two audio tapes. The State told the trial court that the tapes had been made available to Caudill's attorney to listen to the tapes. Caudill's attorney did listen to part of one of the tapes and then requested transcripts of both tapes. The transcripts had been ordered and they were to be sent to Caudill as well as any new discovery. The trial court specifically asked Caudill if he wanted the continuance and Caudill answered in the affirmative. From these facts, we cannot find that the State withheld discovery from Caudill. In this case, we find that the Caudill's requested continuance tolled his speedy trial rights by another thirty-five days.
Accordingly, we find the following periods of time are chargeable to Caudill: the reasonable period between when Caudill filed a motion to reduce his bond and when the motion was decided; the period between March 6, 1997, when Caudill filed his motion inlimine, to March 12, 1997, when the motion was decided; the period between March 17, 1997, when Caudill filed his motion to dismiss, to May 13, 1997, when the motion was decided; the period between May 23, 1997, when Caudill filed his motion for order prohibiting the prosecutor from making false statements to co-defendant's about him, to June 3, 1997, when the motion was decided; and the overlapping period of Caudill's requested continuance from May 29, 1997 to July 8, 1997. Thus, one hundred and nine days are attributable to Caudill. In addition, a reasonable time period is also attributable to Caudill based upon his motion for bond reduction. We cannot find that this reasonable period would be less than eleven days. As such, we find that Caudill was tried within the statutory guidelines of R.C. 2945.71.[5]
Accordingly, Caudill's first assignment is overruled.
 ASSIGNMENT OF ERROR NO. II Danny Caudill was improperly sentenced for engaging in a pattern of corrupt activity with regard to the distribution of cocaine.
Caudill contends that there was no evidence presented to establish that he engaged in a pattern of corrupt activity involving the distribution of cocaine prior to July 1, 1996 and that the trial court should have sentenced him pursuant to the sentencing scheme in effect for offenses committed on or after July 1, 1996. We agree.
"A failure to assert an alleged error in the trial court waives that error on appeal, unless, but for the error, the outcome of the trial court's decision would have been different."State v. Nathan (1995), 99 Ohio App.3d 722, 728, citing State v.Gibson (1993), 89 Ohio App.3d 188. Caudill failed to object to the sentencing of Count One, which waives all but plain error. Crim.R. 52(B). However, because an error in sentencing deprives an individual of a substantial right, an error in sentencing "rises to the level of plain error." State v. Cole (Feb. 27, 1997), Franklin App. No. 96APA07-911, unreported, citing State v. Slagle
(1992), 65 Ohio St.3d 597, 612.
Thus, the question before us is whether the trial court committed plain error by sentencing Caudill in accordance with the law in effect prior to July 1, 1996. To this end, the Ohio Supreme Court has found that the Amended Senate Bill 2 sentencing provisions are inapplicable to those defendants who committed crimes prior to its July 1, 1996 effective date. State v. Rush
(1998), 83 Ohio St.3d 53, 55. Therefore, only if Caudill committed the crime charged prior to July 1, 1996, did the trial court properly sentence him.
In Count One of the indictment, the State alleged that Caudill, "being associated with an enterprise engaged in the sale and distribution of a controlled substance, to wit: Cocaine, did participate directly or indirectly in the affairs of said enterprise through a pattern of corrupt activity * * *." According to the evidence admitted at trial pertaining to cocaine, Caudill's crime occurred after July 1, 1996. Specifically, John Brewster testified that he, Caudill, and Freddie Perkins twice went to a trailer of Jesse Ramirez Sr. to pick up cocaine in July and August of 1996. In addition, Lt. Wood testified that several conversations involving cocaine transactions occurred between October 31, 1996 and December 10, 1996. These conversations were taped pursuant to a wiretap. Thus, pursuant to Rush, supra, the trial court committed plain error when it sentenced Caudill in accordance with sentencing laws in effect prior to July 1, 1996 because, according to the evidence, the crime charged occurred after July 1, 1996.
Accordingly, Caudill's second assignment of error is sustained and we remand this cause to the trial court to sentence Caudill on Count One in accordance with the sentencing law in effect after July 1, 1996.
 ASSIGNMENT OF ERROR NO. III There is insufficient evidence to sustain Appellant Caudill's convictions for funding marijuana trafficking and funding cocaine trafficking.
Caudill contends that the evidence adduced at trial is insufficient to establish that he knowingly provided money to John Miller and/or Debbie Green with the purpose that they use the money to obtain drugs in violation of R.C. 2925.05. Thus, Caudill contends that his convictions on Counts Five and Six must be reversed. We disagree.
The Ohio Supreme Court has explained that "sufficiency" denotes the legal standard which is applied in order to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law. State v. Thompkins (1997),78 Ohio St.3d 380. Sufficiency is a test of whether adequate evidence exists to determine whether such evidence, if believed, would convince the average juror of the defendant's guilt beyond a reasonable doubt. Thompkins, 78 Ohio St.3d at 390 (Cook and Lundberg Stratton, JJ., concurring). See, also, State v. Jenks
(1991), 61 Ohio St.3d 259.
In Counts Five and Six of the indictment, Caudill was charged with providing money to another person with the purpose that they use the money to obtain cocaine (Count Five) or marijuana (Count Six). Specifically, Caudill was charged with two counts in violation of R.C. 2925.05. R.C. 2925.05(A) provides:
 No person shall knowingly provide money or other items of value to another person with the purpose that the recipient of the money or items of value use them to obtain any controlled substance for the purpose of selling or offering to sell the controlled substance or for the purpose of violating section 2925.04 of the Revised Code.
(Emphasis added.) In addition, R.C. 2901.22(B) provides:
 A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
(Emphasis added.)
The amended bill of particulars as to Count Five provides:
 * * * the Defendant, Danny Lee Caudill, from April 28, 1996 until December 10, 1996, as described in the telephone conversations obtained through the wiretap warrant and as set forth above, did knowingly provide money to Jesse J. Ramirez, Sr., directly or indirectly through Defendant, Freddie Perkins and/or Defendant John Brewster, who delivered the money to Defendant Ramirez at his residence in Pleasant Township, Hancock County, Ohio, which money was ultimately given to Defendants John F. Miller, Debbie Green or Fernando Auces for transport or delivery to Texas or wired to Texas with the purpose that the recipient of the money would use them to obtain cocaine, which cocaine was transported back to the State of Ohio and to Defendant Ramirez's location and ultimately distributed or delivered to Lima, Ohio and described above and on the dates indicated, for the purpose of selling or offering to sell the controlled substance.[6]
(Emphasis added.) The amended bill of particulars as to Count Six is identical except marijuana is substituted for cocaine. Caudill now challenges the sufficiency of the evidence relating to these two charges. Specifically, Caudill argues that no evidence was introduced to establish that he knowingly provided money to John Miller and/or Debbie Green to procure cocaine or marijuana for sale.
We find that the bill of particulars in this case clearly elucidates the conduct of the accused. State v. Lawrinson (1990),49 Ohio St.3d 238, 239 citing State v. Sellards (1985), 17 Ohio St.3d 169,171. The record reveals sufficient evidence admitted at trial, which if believed, would convince the average juror of Caudill's guilt beyond a reasonable doubt in accordance with the description given in the bill of particulars. For instance, John Miller testified that he was a runner for Jesse Ramirez, Sr. That is, Miller would drive a vehicle from Ohio to Texas. Once in Texas, the vehicle's secret compartment would be filled with drugs. Miller would then drive the vehicle back to Ohio and the drugs would either be delivered to Jesse Ramirez, Sr. or Fernando Auces. Jesse Ramirez, Jr. testified that he, Jesse Ramirez, Sr., or Auces would weigh, cut and package the marijuana or cocaine. From the testimony of Lt. Wood concerning the wiretapped phone conversations between October 31, 1996 and December 10, 1996, Caudill would place orders for marijuana and cocaine from Jesse Ramirez, Sr. Caudill would obtain the drugs by picking the drugs up from Jesse Ramirez, Sr. or the drugs would be delivered to him. For example, Jesse Ramirez, Jr. testified that he delivered marijuana to Caudill three or four times. In addition, Jesse Ramirez, Jr. testified that Caudill, himself, obtained drugs directly from Jesse Ramirez, Sr. John Brewster also testified that he, Caudill, and Freddie Perkins went to a trailer of Jesse Ramirez Sr. twice to pick up cocaine in July and August of 1996. Moreover, Lt. Wood testified from taped conversations about cocaine transactions between Caudill and Jesse Ramirez, Sr. between October 31, 1996 and December 10, 1996.
On three instances, Caudill paid Jesse Ramirez, Jr., $40,000, $13,000, and between $40,000 and $80,000 for prior shipments of drugs. Jesse Ramirez, Jr. then turned over the cash to his father, Jesse Ramirez, Sr. Jesse Ramirez, Jr. also testified that money would get back to Texas by either placing the money in one of the runner's vehicles or through Western Union type money orders and that the money that returned to Texas would be used to buy more drugs.
When viewing the evidence in a light most favorable to the State, we cannot find error in the jury's determination that Caudill funded marijuana and cocaine trafficking. Thus, Caudill's third assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. IV Where the state's applications for wiretap fail to establish necessity, trial counsel was ineffective for failing to suppress all conversations taped pursuant to the application.
Caudill asserts that the State did not establish necessity for the wiretaps and that his counsel should have moved to suppress all the evidence derived from the wiretaps. As Caudill correctly concedes in his reply brief, the merits of this assignment cannot be addressed by this Court because the wiretap applications are not part of the record before us. See State v.Peagler (1996), 76 Ohio St.3d 496, 499. Accordingly, Caudill's fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. V The trial court erred in convicting Danny Caudill of two counts of possession of cocaine and engaging in a pattern of corrupt activity in violation of the double jeopardy clause of the Fifth Amendment to the United States Constitution and Section 10, Article 1
of the Ohio Constitution.
Caudill contends that he cannot be convicted and sentenced for engaging in a pattern of corrupt activity as well as possession of cocaine because the possessions were the incidents of corrupt activity utilized to establish an essential element of engaging in a pattern of corrupt behavior. We disagree.
R.C. 2941.25(A) provides that "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." In State v. Blankenship (1988), 38 Ohio St.3d 116, the Ohio Supreme Court set forth a two-step analysis in determining whether multiple crimes for which a defendant is charged constitute allied offenses of similar import. The test proceeds as follows:
 In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses.
 Id. at 117 (citations omitted).
The elements required for a violation of R.C. 2925.11 and a violation of R.C. 2923.32 do not correspond to such a degree that the commission of the one offense results in the commission of the other offense. Specifically, R.C. 2923.32(A)(1) provides:
 No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt.
R.C. 2925.11(A) provides:
 No person shall knowingly obtain, possess, or use a controlled substance.
To commit a violation of R.C. 2923.32 requires more than just the commission of two designated acts of corrupt activity. R.C.2923.32 requires employment or association with an enterprise and participation in the affairs of the enterprise through a pattern of corrupt activity. A pattern that includes both a relationship and continuous activity must be proved, as well as proof of the existence of an enterprise and the proceeds, payments, claim or benefits received of the combination of violations must exceed five hundred dollars. R.C. 2923.31(E) and (I)(2)(b). Thus, the conduct required to commit a violation of R.C. 2923.32 is independent of the conduct required to violate the possession of drugs statute. Further, R.C. 2923.32 was enacted to criminalize the "pattern of criminal activity" and not the underlying predicate acts. Its application depends upon the existence of a "pattern of criminal activity" that violates an independent criminal statute. State v. Hill (Dec. 31, 1990), Stark App. No. 8094, unreported. Specifically, R.C. 2923.32(D) in part provides:
 Criminal penalties under this section are not mutually exclusive, unless otherwise provided, and do not preclude the application of any other criminal or civil remedy under this or any other section of the Revised Code.
This provision indicates that a defendant may be convicted of and sentenced on both the engaging in a pattern of corrupt activity charge and upon the predicate offense, in this case possession of drugs.
Accordingly, the trial court was correct in sentencing Caudill upon all three offenses. Caudill's fifth assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. VI The trial court erred in failing to provide Caudill the opportunity to elect sentencing on Counts 1 and 2 under the new sentencing scheme, in violation of R.C. 1.58, Article II, Section 15(D) of the Ohio Constitution, and the Fifth and Fourteenth Amendments of the Federal Constitution.
With respect to Counts One and Two, Caudill contends that he should have been allowed to elect between the sentence in effect at the commission of the offense and the sentence in effect at the time of the sentencing.
As we have found that Caudill is required to be sentenced in accordance with the sentencing law in effect after July 1, 1996 for Count One, Count One will not be addressed under this assignment of error.
The Supreme Court conclusively decided the issue as to Count Two in State v. Rush (1998), 83 Ohio St.3d 53. See, also, Statev. Quevedo (Mar. 25, 1998), Van Wert App. No. 15-97-13, unreported. The Court found that the Amended Senate Bill 2 sentencing provisions are inapplicable to those defendants who committed crimes prior to its July 1, 1996 effective date. Rush,83 Ohio St.3d at 55. As Appellant's offense as described in Count Two began prior to July 1, 1996, Am. Sub. S.B. 2 sentencing provisions do not apply to him. Id. Accordingly, the trial court correctly sentenced Appellant on Count Two in accordance with the sentencing law in effect prior to July 1, 1996.
Accordingly, we find Caudill's sixth assignment of error is not well-taken and is overruled.
Judgment affirmed in part, reversed in part and remandedfor further proceedings consistent with this opinion.
 BRYANT and EVANS, JJ., concur.
[1] The day of Caudill's arrest is not counted when computing the statutory time period. Crim.R. 45(A).
[2] In State v. Brownlow (1991), 75 Ohio App.3d 88, we stated that a motion for a bill of particulars tolled the time period for speedy trial purposes. We went on to hold that even if the motion did not toll the time period, the motions to dismiss filed by the defendant in that case did toll the time period. Today we hold that generally a motion for a bill of particulars does not toll the time period for speedy trial purposes.
[3] The trial court also heard arguments on Caudill's request for discovery, motion for a bill of particulars and amended motion for a bill of particulars, motion for request of prosecuting attorney's evidence, demand for copies of application for search warrants and affidavits supporting applications, motion in limine and the State's motion to view premises and motion to continue trial.
[4] The original bill of particulars filed by the State consisted of fourteen pages.
[5] SPEEDY TRIAL CALCULATION
December 10, 1996 — January 3, 1997 Chargeable to the State
 January 3, 1997 — February 11, 1997 Reasonable time period chargeable to Caudill and the remaining time chargeable to the State
February 11, 1997 — March 6, 1997 Chargeable to the State
March 6, 1997 — March 12, 1997 Chargeable to Caudill
March 12, 1997 — March 17, 1997 Chargeable to the State
March 17, 1997 — May 13, 1997 Chargeable to Caudill
May 13, 1997 — May 23, 1997 Chargeable to the State
May 23, 1997 — July 8, 1997 Chargeable to Caudill
[6] It is important to note that, although the bill of particulars stated that Caudill's conduct occurred from April 10, 1996 to December 10, 1996, the evidence at trial demonstrated that Caudill committed this crime with regards to cocaine only after July 1, 1996.