THE STATE OF OHIO, APPELLANT, *v.* BROUGHTON, APPELLEE.

[Cite as *State v. Broughton* (1991), 62 Ohio St.3d 253.]

254

(No. 91–742—Submitted September 25, 1991—Decided December 18, 1991.)

*Donald W. White,* Prosecuting Attorney, *Daniel J. Breyer* and *David H. Hoffmann,* for appellant.

*Walker, Bradford & Hill* and *D. Vincent Faris,* for appellee.

HOLMES, J.   The primary issue before the court is whether the time in which to bring Broughton to trial on his second indictment had expired, pursuant to Ohio's speedy-trial statute.   For the reasons that follow, we answer such query in the negative.

## I

### Speedy–Trial Computation

The key fact we must discern from the record in this case is how much time had run against the state pursuant to R.C. 2945.71 *et seq.*, in order to determine whether Broughton's speedy-trial rights were violated.

The right to a speedy trial is encompassed within the Sixth Amendment to the United States Constitution, which provides that an "accused shall enjoy the right to a speedy and public trial * * *." See, also, Section 10, Article I of the Ohio Constitution. Moreover, the availability of a speedy trial to a person accused of a crime is a fundamental right made obligatory on the states through the Fourteenth Amendment. See *Klopfer v. North Carolina* (1967), 386 U.S. 213, 222–223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1, 8; *State v. Singer* (1977), 50 Ohio St.2d 103, 106, 4 O.O.3d 237, 238, 362 N.E.2d 1216, 1218, at fn. 2.

In *State v. Pachay* (1980), 64 Ohio St.2d 218, 18 O.O.3d 427, 416 N.E.2d 589, syllabus, we observed that R.C. 2945.71 *et seq.* " * * * constitute a rational effort to enforce the constitutional right to a public speedy trial of an accused charged with the commission of a felony or a misdemeanor and shall be strictly enforced by the courts of this state." Moreover, as was emphasized in *State v. Pudlock* (1975), 44 Ohio St.2d 104, 106, 73 O.O.2d 357, 358, 338 N.E.2d 524, 525, we will not permit the state to engage in " * * * practices which undercut the implementation of the 'speedy trial' provisions within R.C. 2945.71 and 2945.73 * * *." In reviewing whether a particular practice has undercut the implementation of the speedy-trial provisions, we approve of the language in *United States v. Turner* (C.A.9, 1991), 926 F.2d 883, 889, which stated:

"To determine whether the government has violated a defendant's right to a speedy trial, we weigh the length of the delay, the reasons for it, the defendant's timeliness and manner of asserting this right, and whether the defendant has suffered cognizable prejudice. * * * Recognized prejudices are oppressive pretrial punishment, protracted anxiety and impairment of defense. * * * No single factor is either necessary or sufficient to establish a violation." (Citations omitted.) See, also, *United States v. Taylor* (1988), 487 U.S. 326, 340–341, 108 S.Ct. 2413, 2421, 101 L.Ed.2d 297, 313; *Barker v. Wingo* (1972), 407 U.S. 514, 537, 92 S.Ct. 2182, 2195, 33 L.Ed.2d 101, 121 (White, J., concurring).

Further, as applicable in this case, R.C. 2945.71(C)(2) provides that a person against whom a charge of felony is pending "[s]hall be brought to trial within two hundred seventy days after his arrest." Consequently, the speedy-trial

statute required Broughton to be brought to trial within 270 days of his original indictment dated November 17, 1988, unless tolled for reasons permitted under the statute. In order to determine the exact number of days that should have been tallied against the state it is necessary to separate and examine certain relevant periods in order to ensure they were properly characterized as either tolling the speedy-trial statute or allowing it to run.[2]

## A

The first period we shall examine is the time between the return of the original indictment on November 17, 1988 and the trial court's dismissal (because of the defective indictment) on July 18, 1989. This period equals 243 days. However, since it is undisputed that Broughton spent one day in jail in lieu of bail on the pending charge, an additional two days must be tacked on to the first day already counted against the state pursuant to R.C. 2945.71(E).[3] Thus, the total number of days counted against the state until the dismissal of the original indictment was 245.

## B

The next time period we construe is from the day after the trial court's dismissal of the first indictment (charging corruption of a minor), July 19, 1989, until October 18, 1989, the day preceding Broughton's subsequent indictment on two counts of rape. This period is the time between indictments where Broughton was not under any stigma associated with a criminal proceeding.

---

2. The following time periods are relevant for purposes of our discussion of the speedy-trial statute:

   A. From November 17, 1988 (the date of defendant's first indictment and arrest) to July 18, 1989 (the date the trial court dismissed the case pursuant to a defective indictment).

   B. From July 19, 1989 (the first day defendant was not under any indictment for the crimes he allegedly committed) to October 18, 1989 (the last day before defendant was indicted for the second time).

   C. From either October 19, 1989 (the date of defendant's second indictment) or October 26, 1989 (the date of defendant's arrest for the crimes alleged in the second indictment) to November 13, 1989 (the date defendant filed a motion to dismiss based upon double-jeopardy grounds).

   D. From November 16, 1989 (the date defendant filed a motion to compel grand jury testimony) and December 22, 1989 (the date the motion to dismiss on double-jeopardy grounds was denied by the trial court) to March 22, 1990 (the date defendant filed a motion to dismiss on speedy-trial grounds, which was ultimately granted by the trial court on April 4, 1990).

3. R.C. 2945.71(E) provides: "For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days. * * * "

In reviewing the dictates of R.C. 2945.71, we are cognizant that the speedy-trial statute shall run against the state only during the time in which an indictment or charge of felony is *pending*. See R.C. 2945.71(C). However, this does not directly address the situation where a person has previously been charged under an indictment which was dismissed and the same underlying facts provide the basis for a new indictment. In *Westlake v. Cougill* (1978), 56 Ohio St.2d 230, 233, 10 O.O.3d 382, 383, 383 N.E.2d 599, 601, we tolled the speedy-trial statute during the time period between a *nolle prosequi* of a misdemeanor charge and the service of summons of a second filing of a misdemeanor charge arising out of the same conduct, since no charge was pending against the defendant during that period. See, also, *State v. Spratz* (1979), 58 Ohio St.2d 61, 62, 12 O.O.3d 77, 388 N.E.2d 751, 752, fn. 2 (the speedy-trial statute was tolled following a nolled indictment until the date of reindictment); *State v. Stephens* (1977), 52 Ohio App.2d 361, 371, 6 O.O.3d 404, 409–410, 370 N.E.2d 759, 766 (where dismissal is premised on prosecutorial fault and the defendant is subsequently reindicted, speedy-trial time runs during the time of incarceration pending trial under the original indictment, in addition to the time spent pending trial under the reindictment; but defendant's release without bail upon dismissal of the original indictment tolls the speedy-trial time between the dismissal and the reindictment because during such time no charge is pending). Similarly, in *State v. Bonarrigo* (1980), 62 Ohio St.2d 7, 16 O.O.3d 4, 402 N.E.2d 530, we held that the speedy-trial statute was tolled after a misdemeanor charge was nolled until such time as a felony indictment, based upon the same conduct, was handed down. In ensuring that the accused's statutory rights were adequately protected, we noted in *Bonarrigo:*

" ' * * * After the Government's dismissal of the complaint against him appellant * * * was no longer under any of the restraints associated with arrest and the pendency of criminal charges against him. He was free to come and go as he pleased. He was not subject to public obloquy, disruption of his employment or more stress than any citizen who might be under investigation but not charged with a crime. Unless and until a formal charge was filed against him, neither he nor the public generally could have any legitimate interest in the prompt processing of a nonexistent case against him.'

" * * * [A]lthough a person under investigation, but not subject to formal charges, 'may suffer some apprehension or anxiety, his guarantee against pre-prosecutorial delay lies solely in the applicable statute of limitations' and in the guarantees of due process." *Bonarrigo, supra,* at 11, 16 O.O.3d at 7, 402 N.E.2d at 534–535, fn. 5, quoting from *United States v. Hillegas* (C.A.2, 1978), 578 F.2d 453, 457–458.

Given the limited precedent from which to resolve the present issue, we have reviewed interpretations of the speedy-trial laws from other states for guidance. Although speedy-trial rules as well as the general rules of criminal procedure may vary from state to state, there are differing standard approaches for counting the speedy-trial time period between a dismissal and the refiling of criminal charges. See, generally, Annotation, Application of Speedy Trial Statute to Dismissal or Other Termination of Prior Indictment or Information (1985), 39 A.L.R.4th 899. Thus, we have found three general approaches for computing speedy-trial periods in cases similar to the one at bar. First, some courts hold that the speedy-trial period commences with the filing of the first criminal charges and continues to run uninterrupted despite a dismissal and refiling of the charges. Other courts, in a second approach, hold that the dismissal of the criminal charges stops the speedy-trial period and it commences anew upon the refiling of charges. See, *e.g., State v. Lyons, supra,* 61 Ohio App.2d at 229, 15 O.O.3d at 368, 401 N.E.2d at 453–454; *State v. Tiedeman* (S.D.1988), 433 N.W.2d 237, 240. Finally, utilizing yet another approach, a majority of courts have held that the speedy-trial period is tolled during the time between a dismissal and refiling of charges. See, *e.g., Bentley v. State* (Ind.1984), 462 N.E.2d 58, 60; *Young v. State* (Ind.1988), 521 N.E.2d 671; *Derby v. Lackey* (1988), 243 Kan. 744, 763 P.2d 614, paragraph two of the syllabus; *People v. Freedman* (1987), 155 Ill.App.3d 469, 474–475, 108 Ill.Dec. 165, 169–170, 508 N.E.2d 326, 330–331; *State v. Lamb* (1987), 84 N.C.App. 569, 575–578, 353 S.E.2d 857, 860–862, affirmed (1988), 321 N.C. 633, 640–642, 365 S.E.2d 600, 604.

In considering which of the above approaches to adopt, we recognize "the public's interests not only in the prompt adjudication of criminal cases, but also in obtaining convictions of persons who have committed criminal offenses against the state." *Bonarrigo, supra,* 62 Ohio St.2d at 11, 16 O.O.3d at 6–7, 402 N.E.2d at 534; see, also, *State v. Calhoun* (1985), 18 Ohio St.3d 373, 376, 18 OBR 429, 432, 481 N.E.2d 624, 627. We explained in *Bonarrigo* that "[i]t was not the General Assembly's sole purpose in enacting the speedy trial statutes to reward those accused of criminal conduct for a prosecutor's lack of diligence." *Id.,* 62 Ohio St.2d at 10, 16 O.O.3d at 6, 402 N.E.2d at 534. Therefore, we are persuaded that the majority view (tolling the speedy-trial statute between dismissal and reindictment) is sound in light of our previous holdings in *Bonarrigo, supra, Cougill, supra,* and *Spratz, supra,* and the legislative intent behind the speedy-trial statute. Accordingly, we hold that for purposes of computing how much time has run against the state under the speedy-trial statute, the time period between the dismissal without prejudice of an original indictment and the filing of a subsequent indictment, premised upon the same facts as alleged in the original indictment, shall not be counted

unless the defendant is held in jail or released on bail pursuant to Crim.R. 12(I).[4]

In applying the proper tolling standard to the case *sub judice*, we find that the total number of days which ran against the state, pursuant to R.C. 2945.71, from July 19, 1989 through October 18, 1989, was zero. This result is premised on the fact that no charges were "pending" during this time period; therefore, there were no restraints placed on Broughton that are usually associated with arrest and the pendency of criminal proceedings.

## C

Our next inquiry centers on the time period between Broughton's second indictment on October 19, 1989 or arrest on October 26, 1989, and his filing of a motion to dismiss on November 13, 1989. As a threshold matter we will first examine on which day the speedy-trial statute resumed running against the state (*i.e.*, the day on which the second indictment was handed down by the grand jury or the day Broughton was arrested under the second indictment).

R.C. 2945.71(C)(2) explicitly states that a defendant against whom a charge of felony is pending "[s]hall be brought to trial within two hundred seventy days after his *arrest*." (Emphasis added.) Consequently, the arrest of a defendant, under a reindictment which is premised on the same underlying facts alleged in a previous indictment, is the proper point at which to resume the running of the speedy-trial period.[5] See, *e.g.*, *Gamblin v. State* (Ind.App. 1991), 568 N.E.2d 1040, 1044 (defendant's speedy-trial period resumes upon

---

4. Crim.R. 12(I) provides in pertinent part:

   "*Effect of determination.* If the court grants a motion to dismiss based on a defect in the institution of the prosecution or in the indictment, information, or complaint, it may also order that the defendant be held in custody or that his bail be continued for a specified time not exceeding fourteen days, pending the filing of a new indictment, information, or complaint. Nothing in this rule shall affect any statute relating to periods of limitations.   * * * "

5. Although the statutory speedy-trial period does not begin until the defendant is arrested under a subsequent indictment, there may be instances where the elapsed time between reindictment and arrest may violate the defendant's federal and state constitutional rights to a speedy trial.

   See, further, *United States v. Marion* (1971), 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468, 479 ("either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge" are necessary to trigger the protections of the Sixth Amendment); *United States v. Lovascc* (1977), 431 U.S. 783, 788–789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752, 758.

   In the present case a seven-day period between reindictment and arrest did not subject Broughton to protracted anxiety or an impairment of his defense, nor can we determine any prejudice he suffered by the delay. Nevertheless, even if we determined that the seven-day period ran against the state, the speedy-trial time limit had yet to expire, since the total number

defendant's arrest on the refiled charges pursuant to Indiana's Crim.R. 4[C], which provides that the period begins to run on the date the charges are filed or the date the defendant is arrested, whichever is later). Furthermore, any time period that has elapsed under the original indictment should be tacked on to the time period commencing with the second indictment. See *Bonarrigo, supra,* 62 Ohio St.2d at 11, 16 O.O.3d at 7, 402 N.E.2d at 534 (" * * * where a prosecutor obtains a felony indictment, based upon the same conduct as was previously *nolled,* lesser-included misdemeanor charge, the time within which the accused shall be brought to trial pursuant to R.C. 2945.71 *et seq.* consists of whatever residue remains from the 270–day period set forth in R.C. 2945.71[C] after deducting the speedy trial time expended prior to the *nolle prosequi*").

In applying the foregoing principles to the case *sub judice* we find that the 245 days, which previously elapsed against the state, should be tacked on to the time period commencing with Broughton's arrest under the subsequent indictment. Therefore, the state had whatever residue that remained from the 270–day period set forth in R.C. 2945.71(C)(2), after deducting the speedy-trial time expended prior to the dismissal, in which to bring Broughton to trial on the second indictment. In addition, the speedy-trial time period was again tolled upon Broughton's motion to dismiss on double-jeopardy grounds, filed on November 13, 1989. See R.C. 2945.72(E) [6]; *State v. Bickerstaff* (1984), 10 Ohio St.3d 62, 67, 10 OBR 352, 356, 461 N.E.2d 892, 896 ("It is evident from a reading of the statute [R.C. 2945.72(E) ] that a motion to dismiss acts to toll the time in which a defendant must be brought to trial."); *State v. Bunyan* (1988), 51 Ohio App.3d 190, 193, 555 N.E.2d 980, 983.

Therefore, we determine that from October 26, 1989 to November 13, 1989, eighteen days ran under the speedy-trial statute against the state. Consequently, a total of 263 days had elapsed, for speedy-trial purposes, from the date of the original indictment on November 17, 1988 to November 13, 1989.

## D

The final time period we construe is from November 16, 1989, the date Broughton filed a motion to compel grand jury testimony, to March 22, 1990,

---

of days that had elapsed, including the seven days after reindictment until arrest, was 270 as of November 13, 1989 (when Broughton filed his motion to dismiss).

6. R.C. 2945.72 provides in pertinent part:

"The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:
" * * *

"(E) Any period of delay necessitated by reason of a plea in bar or abatement, *motion,* proceeding, or action made or instituted by the accused." (Emphasis added.)

the date Broughton filed a motion to dismiss on speedy-trial grounds. In approaching this issue a factual review is indicated.

As noted *supra*, Broughton filed a motion to dismiss on double-jeopardy grounds on November 13, 1989. Three days later he also filed a motion to compel the state to produce transcripts of the grand jury proceedings in both the prior case which was dismissed and the case which was pending. The trial court first addressed Broughton's November 13 motion, which it denied in a journal entry and decision dated December 22, 1989. Next, the trial court treated the pending November 16 motion to compel grand jury proceedings, in a pretrial hearing held on March 20, 1990. The issue was continued pending a response by the state and an examination by the court. Subsequently, on March 22, 1990, Broughton filed his motion to dismiss on speedy-trial grounds, which was ultimately granted on April 4, 1990.

Thus, we agree with the state in its assertion that "[t]here were defense motions pending from November 13, 1989, to March 22, 1990, until April 4, 1990 * * *," which tolled the speedy-trial statute pursuant to R.C. 2945.72(E) (tolling speedy-trial statute during period in which a defense motion is pending). Consequently, the total number of days that ran against the state, pursuant to R.C. 2945.71 *et seq.* and Crim.R. 45(A),[7] from November 17, 1988 through April 4, 1990, was 263. Accordingly, the state still had the balance of the speedy-trial period (seven days) in which to bring Broughton to trial on the second indictment.

## II

### Double Jeopardy

Although Broughton neither appealed nor could appeal[8] the ruling by the trial court concerning his November 13, 1989 motion to dismiss on double-jeopardy grounds, we feel compelled to review this issue, since remanding this case for a trial on the second indictment could violate Broughton's Fifth

---

7. Crim.R. 45(A) provides:

"*Time: Computation.* In computing any period of time prescribed or allowed by these rules, by the local rules of any court, by order of court, or by any applicable statute, the date of the act or event from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, Sunday, or legal holiday, in which event the period runs until the end of the next day which is not Saturday, Sunday, or legal holiday. * * *"

8. We have recently held that the overruling of a motion to dismiss on double-jeopardy grounds is not a final appealable order pursuant to R.C. 2505.02. See *State v. Crago* (1990), 53 Ohio St.3d 243, 559 N.E.2d 1353. However, where a trial court has dismissed a case on grounds other than double jeopardy the appellate court may consider *sua sponte*, pursuant to Crim.R. 52(B), whether a potential remand would inevitably violate a defendant's double-jeopardy rights.

Amendment rights under the United States Constitution.[9]  See, also, Section 10, Article I of the Ohio Constitution.  Therefore, pursuant to Crim.R. 52(B),[10] we will *sua sponte* address whether Broughton's double-jeopardy rights would be violated by requiring him to submit to a second trial following a dismissal, on his own motion, due to a defective indictment.

As a threshold to this analysis, we note that "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus.  In light of this standard, if we determine that a trial, pursuant to a reindictment based upon the same facts as a previously dismissed indictment, violates a defendant's double-jeopardy rights we will dismiss the case since it would be plain error to remand the matter to the trial court.

Beginning with *United States v. Wilson* (1975), 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232; *United States v. Jenkins* (1975), 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250; and *Serfass v. United States* (1975), 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265, the United States Supreme Court addressed the issue of whether a dismissal of an indictment after jeopardy had attached was considered an acquittal on the merits.  The thrust of these cases was that regardless of whether a dismissal of an indictment after jeopardy had attached amounted to an acquittal on the merits, the government had no right to appeal, because "further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged, would have been required upon reversal and remand." [11]  *Jenkins, supra,* 420 U.S. at 370,

---

9. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides: " * * * nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb * * *."  See *Benton v. Maryland* (1969), 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (holding that the Double Jeopardy Clause of the Fifth Amendment is applicable to the states through the Fourteenth Amendment).

10.  Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

11.  In *United States v. Scott* (1978), 437 U.S. 82, 86, 98 S.Ct. 2187, 2191, 57 L.Ed.2d 65, 71, fn. 2, the court interpreted the former double-jeopardy rule set out in *Wilson, supra,* and *Jenkins, supra,* by quoting from Justice Rehnquist's concurrence in *Lee v. United States* (1977), 432 U.S. 23, 36, 97 S.Ct. 2141, 2148–2149, 53 L.Ed.2d 80, 91, which stated:

"[D]ismissals (as opposed to mistrials) if they occurred at a stage of the proceeding after which jeopardy had attached, but prior to the factfinder's conclusion as to guilt or innocence, were final so far as the accused defendant was concerned and could not be appealed by the Government because retrial was barred by double jeopardy.  This made the issue of double jeopardy turn very largely on temporal considerations—if the Court granted an order of

95 S.Ct. at 1013, 43 L.Ed.2d at 259. This line of reasoning was overruled in *United States v. Scott* (1978), 437 U.S. 82, 86–87, 98 S.Ct. 2187, 2191, 57 L.Ed.2d 65, 71 (which expressly overruled *Jenkins, supra* ).

In *United States v. Scott, supra,* the court explained that prior cases dealing with double jeopardy had to be abandoned, since they placed "unwarrantedly great emphasis on the defendant's right to have his guilt decided by the first jury empaneled to try him so as to include those cases where the defendant himself seeks to terminate the trial before verdict on grounds unrelated to factual guilt or innocence." [12] *Id.* at 87, 98 S.Ct. at 2191, 57 L.Ed.2d at 71. The dispute in *Scott* centered on a defendant who was charged in a three-count indictment for distribution of narcotics. Although defense counsel moved the court several times during trial for a dismissal based upon prejudicial preindictment delay, the trial court granted the motion only at the close of all the evidence. The government appealed to the United States Court of Appeals, Sixth Circuit, which relied upon *Jenkins, supra,* and dismissed the case on double-jeopardy grounds, concluding that any further prosecution by the government was barred.

On appeal, the United States Supreme Court reversed the court of appeals, holding, *inter alia,* that jeopardy does not attach if the court "terminates the proceedings favorably to the defendant on a basis not related to factual guilt or innocence." *Id.* at 92, 98 S.Ct. at 2194, 57 L.Ed.2d at 75. More specifically, the court explained:

"We now turn to the relationship between the Double Jeopardy Clause and reprosecution of a defendant who has *successfully obtained not a mistrial but a termination of the trial in his favor before any determination of factual guilt or innocence.* Unlike the typical mistrial, the granting of a motion such as this obviously contemplates that the proceedings will terminate then and there in favor of the defendant. The prosecution, if it wishes to reinstate the proceedings in the face of such a ruling, ordinarily must seek reversal of the decision of the trial court.

---

dismissal during the factfinding stage of the proceedings, the defendant could not be reprosecuted, but if the dismissal came later, he could."

12. In *State v. Calhoun, supra,* 18 Ohio St.3d at 376, 18 OBR at 432, 481 N.E.2d at 627, we discussed the reasoning behind *Scott, supra,* by noting:

"The court in *Scott* replaced the *Jenkins* test with a new test, wherein the public's interest in the government's right to appeal an erroneous conclusion of law is to be balanced against the interest of the defendant in avoiding a second trial. The court in *Scott* focused on whether the termination of the proceedings has been on a ground related to the defendant's guilt or innocence * * *."

" * * * [Notwithstanding *Jenkins, supra,*] only last Term, in *Lee* [*v. United States* (1977), 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80], *supra,* the Government was permitted to institute a second prosecution after a midtrial dismissal of an indictment. The Court found the circumstances presented by that case 'functionally indistinguishable from a declaration of mistrial.' 432 U.S., at 31 [97 S.Ct., at 2146, 53 L.Ed.2d, at 87]. Thus, *Lee* demonstrated that, at least in some cases, the dismissal of an indictment may be treated on the same basis as the declaration of a mistrial." (Emphasis added.) *Id.* at 94, 98 S.Ct. at 2195–2196, 57 L.Ed.2d at 76.

The *Scott* court summarized its position, thusly:

"We think that in a case such as this the defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, *suffers no injury cognizable under the Double Jeopardy Clause * * *.* Rather, we conclude that the Double Jeopardy clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice." (Footnote omitted; emphasis added.) *Id.* at 98–99, 98 S.Ct. at 2198, 57 L.Ed.2d at 79.

As noted in *Scott,* the analysis contained in *Lee v. United States, supra,* was the first case to suggest that a dismissal could be treated, in some situations, as tantamount to a mistrial. In *Lee,* as in the case at bar, there was a defect in the charging instrument. Specifically, the defendant was charged with a theft offense, but the charging instrument made no mention of knowledge or intent as required under law. At the bench trial, following the prosecutor's opening statement, the defendant's lawyer moved to dismiss the information. The court refused to rule on the motion, but instead took it under consideration. After both the government and defense presented their cases, the court concluded that there was no question about the guilt of the defendant; however, it found that defendant's motion to dismiss had to be granted because of the failure of the information to charge either knowledge or intent. *Lee, supra,* 432 U.S. at 26, 97 S.Ct. at 2143, 53 L.Ed.2d at 85. The defendant was again charged with theft and was convicted. The Seventh Circuit Court of Appeals affirmed, rejecting the defendant's claim of double jeopardy. *Id.* at 27, 97 S.Ct. at 2144, 53 L.Ed.2d at 85.

The United States Supreme Court affirmed Lee's conviction and rejected his claim of double jeopardy. The court reasoned that the trial court did not contemplate an end to all prosecution of the defendant for the offense charged. *Id.* at 30, 97 S.Ct. at 2145, 53 L.Ed.2d at 87. The *Lee* court stated:

" * * * [T]he proceedings against Lee cannot be said to have terminated in his favor. The dismissal clearly was not predicated on any judgment that Lee could never be prosecuted for or convicted of the theft of the two wallets. To

the contrary, the District Court stressed that the only obstacle to a conviction was the fact that the information had been drawn improperly. The error, like any prosecutorial or judicial error that necessitates a mistrial, was one that could be avoided—absent any double jeopardy bar—by beginning anew the prosecution of the defendant. And there can be little doubt that the court granted the motion to dismiss in this case in contemplation of just such a second prosecution. In short, the order entered by the District Court was functionally indistinguishable from a declaration of mistrial.

"We conclude that the distinction between dismissals and mistrials has no significance in the circumstances here presented and that established double jeopardy principles governing the permissibility of retrial after a declaration of mistrial are fully applicable." *Id.* at 30–31, 97 S.Ct. at 2145–2146, 53 L.Ed.2d at 87–88; see, also, *Illinois v. Somerville* (1973), 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (discovery of a defective indictment after a trial had begun and the court ordered a mistrial over defendant's objection did not prevent a retrial on double-jeopardy grounds).

Therefore, we hold that where jeopardy has attached during the course of a criminal proceeding, a dismissal of the case may be treated in the same manner as a declaration of a mistrial and will not bar a subsequent trial when: (1) the dismissal is based on a defense motion, and (2) the court's decision in granting such motion is unrelated to a finding of factual guilt or innocence.[13]

In the case *sub judice,* the trial court, just as the court in *Lee,* commented that the evidence indicated the defendant's guilt, but nonetheless dismissed the indictment on defendant's motion due to a defect within the charging instrument. Here, there would be no bar to a subsequent retrial of the defendant, since the trial judge in the first trial never contemplated an end to all prosecution of the defendant for the offense charged. Furthermore, the court's decision was premised on a basis *unrelated* to factual guilt or innocence of the offense of which the defendant was accused.

## III

### Summary

Since Broughton filed a motion to compel the production of grand jury testimony on November 16, 1989, seven days still remain before the expiration

---

13. This view is consistent with our prior double-jeopardy cases, as illustrated in *State v. Calhoun, supra* (in interpreting *Scott, supra,* we held that a trial court's *sua sponte* dismissal at midtrial on grounds that statute was vague did not bar a retrial on double-jeopardy grounds); *State v. Malinovsky* (1991), 60 Ohio St.3d 20, 23, 573 N.E.2d 22, 26 ("*Scott* ultimately held that retrial is permissible after the guarantee against double jeopardy has attached where the defendant has sought a termination of the proceedings on grounds other than the state's failure of proof").

of the speedy-trial time limit. Therefore, we order that this cause be remanded for the trial court to treat Broughton's pending motions on prosecutorial vindictiveness and grand jury testimony.

Accordingly, the judgment of the court of appeals is reversed and the cause is remanded to the trial court for proceedings not inconsistent with this opinion.

*Judgment reversed and*
*cause remanded with instructions.*

MOYER, C.J., WRIGHT, H. BROWN and RESNICK, JJ., concur.

DOUGLAS, J., concurs in judgment only.

SWEENEY, J., dissents.

