[Cite as *State v. Martin*, 2014-Ohio-1902.]

COURT OF APPEALS
MORROW COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 13CA0004 |
| | : | |
| DAVID G. MARTIN | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Morrow County Court of
Common Pleas, Case No. 2012-CR-
0061



JUDGMENT:                   AFFIRMED




DATE OF JUDGMENT ENTRY:     May 1, 2014




APPEARANCES:

For Plaintiff-Appellee:                    For Defendant-Appellant:

CHARLES HOWLAND                            ERIC M. HEDRICK
MORROW COUNTY PROSECUTOR                   OHIO PUBLIC DEFENDER OFFICE
K. DAVID HOMER                             250 E. Broad St., Suite 1400
60 East High Street                        Columbus, OH 43215
Mt. Gilead, OH 43338

*Delaney, J.*

{¶1} Appellant David G. Martin appeals from the June 6, 2013 Judgment Entry of Sentence of the Morrow County Court of Common Pleas. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} C.M. was 13 years old at the time of these events and had just finished seventh grade. She lived with her mother, T.M., and had no contact with her father. She and T.M. needed a new place to live. T.M.'s brother suggested a farm in Morrow County where T.M. and C.M. could live rent-free in exchange for taking care of the landlady's llamas and alpacas. T.M. and C.M. were supposed to live in a trailer on the property.

{¶3} Appellant was already living in a house on the property with three of his children, ages 2, 4, and 6. Appellant was not employed but did work around the farm. Appellant's estranged wife visited sometimes to exchange the children. Every other week the children were at the house with appellant.

{¶4} T.M. and C.M. moved onto the property in the spring of 2011, around the beginning of June. T.M. and C.M. did not live in the trailer; at appellant's suggestion, they moved into the house. T.M. shared a bedroom with appellant and C.M. had a bedroom of her own.

{¶5} T.M. continued to travel to her job at a nursing home in Ashland County; she would leave the house at 4:45 a.m. to work a shift from 6:00 a.m. until 2:00 p.m., although she sometimes worked later. She would return to the house around 3:00 or

4:00 p.m.  In the meantime, C.M. was alone with appellant and, every other week, his three small children.

*C.M. Testifies to Repeated Forced Sexual Contact*

{¶6}  C.M. testified around the end of June, appellant began coming into her bedroom after her mother left for work.  She stated appellant would get into her bed and have sexual intercourse with her against her will.  C.M. began locking her bedroom door but testified appellant opened the door with a butter knife or credit card.  Based upon her mother's work schedule, C.M. estimated this occurred 43 times over the summer.

{¶7}  C.M. did not tell her mother or anyone else about the sexual intercourse with appellant.  She read a written statement she prepared for court stating she didn't tell because she was afraid of appellant and thought no one would believe her; she testified she didn't tell because she didn't want appellant to lose his children.

{¶8}  On August 26, 2011, T.M. went to work but left early and returned to the house.  She found all the doors locked and at first was unable to get in the house.  Upon entering she couldn't find C.M. and eventually found her in appellant's bed, with appellant.  C.M. told T.M. she came into bed with appellant because she was afraid of a thunderstorm and appellant, purportedly asleep, awakened and was "shocked" to find C.M. in bed with him.

{¶9}  T.M. acknowledged she did C.M.'s laundry including her sheets and she observed white stains on the sheets but didn't find it unusual.

{¶10} On September 2, 2011, T.M. and C.M. moved out of the house because, according to T.M., appellant brought alcoholic beverages into the house.  They moved in with a relative.  C.M. ran away three times and was found with appellant each time.

{¶11} The last time C.M. ran away was on September 19, 2011. T.M. received a call from C.M.'s school stating she was absent, and T.M. learned appellant had picked her up from school that day when she called him to do so. Appellant and his estranged wife initially took C.M. to the department of human services in Mt. Gilead but were told she would have to go to Richland County instead. Appellant declined to accompany his wife and C.M. to Richland County Children's Services.

{¶12} C.M. initially disclosed the rapes to a social worker on September 19, 2011 at Richland County Children's Services. She was examined by a SANE nurse at Mansfield MedCentral and was discovered to be ten weeks pregnant. Her child was born on April 4, 2012, and paternity testing confirmed appellant is the father of the child.

*The Defense Case*

{¶13} Appellant's estranged wife testified on his behalf at trial and explained she and appellant took C.M. to Children's Services after the third time she ran away because C.M. begged them to; she was desperate to get away from her mother. The wife testified she never saw any inappropriate behavior between appellant and C.M.

{¶14} Appellant testified on his own behalf at trial. He said C.M. listened to him more than her mother and T.M. resented him as a result. He claimed no one ever told him how old C.M. was until after he was arrested, and he believed her to be 15 or 16 because her mother asked him to teach her how to drive because she would be getting her license soon. He claimed he had sexual intercourse with C.M. only once: one time, in late June, he awoke to find C.M. in the midst of performing a sexual act on top of him. He was under the effect of medication at the time and didn't tell anyone out of embarrassment. He sought to distance himself from C.M. afterward and couldn't handle

the stress of her running away and showing up at his house repeatedly, so he and his estranged wife decided to take her to children's services. They took her first to the Mt. Gilead office and then learned she would have to go to Richland County; the only reason appellant did not accompany her there is because he had to go home to feed the animals, not because he was afraid of discovery of the rapes.

*Morrow County Court of Common Pleas Case No. 2011-CR-0098*

{¶15} On October 21, 2011, appellant was charged by indictment with one count of unlawful sexual conduct with a minor pursuant to R.C. 2907.04, the victim being 13 years of age but less than 16 years of age, a felony of the third degree; and one count of rape pursuant to R.C. 2907.02(A)(1)(c), a felony of the first degree. Appellant appeared at initial appearance on October 25, 2011 with retained counsel, entered pleas of not guilty, and the matter was set for jury trial on December 20, 2011.

{¶16} Appellant duly filed a demand for discovery and a motion for bill of particulars and appellee responded. Appellee's bill of particulars filed December 8, 2011 states regarding Count I, unlawful sexual conduct with a minor: "Defendant engaged in sexual intercourse with CM. CM was 13 years of age at the time. CM is now pregnant." Regarding Count II, rape, the bill of particulars states the same and adds, "CM has a learning disability and struggles with comprehension. CM's ability to consent to sexual intercourse with the defendant was impaired by her disability. Defendant, who was living with CM and her mother, was aware of CM's disability. CM is pregnant."

{¶17} On December 12, 2011, defense trial counsel filed a motion for continuance asking the court to continue the "Change of Plea Hearing" scheduled for

December 20, 2011 because "[a]dditional time is needed to prepare for the case." The trial court granted the motion to continue and ruled the "Change of Plea" date was continued until February 6, 2012.

{¶18} On January 30, 2012, appellee filed a Motion stating:

> [Appellee] moves this Court to dismiss the above captioned case without prejudice. The reason for this request is that the State wishes to obtain a DNA sample for evidence purposes from the baby the victim is carrying. The victim is not due to have the child until April 2012. The State will refile the charges upon receiving the results of the DNA test.

{¶19} Also on January 30, 2012, appellant filed a "Motion to Waive Speedy Trial Right," waiving appellant's right to a speedy trial and stating the following in support: "[Appellant] wants to waive his Sixth Amendment Constitutional Right to a speedy trial. The reason for the requests (*sic*) is that the defendant's counsel needs additional time to interview witnesses and to prepare for trial. A continuance is requested. This is the first continuance."

{¶20} Finally, also on January 30, 2012, the trial court filed a Journal Entry dismissing the case without prejudice.

{¶21} The trial court granted the motion to waive appellant's right to speedy trial on January 31, 2012.

*Morrow County Court of Common Pleas Case No. 2012-CR-0061*

{¶22} On May 24, 2012, appellant was indicted upon one count of unlawful sexual conduct with a minor pursuant to R.C. 2907.04, a felony of the third degree, and one count of rape pursuant to R.C. 2907.02(A)(1)(c), a felony of the first degree.

{¶23} Appellant's whereabouts were now unknown and appellee sought a pen register trap and trace device to track appellant's movements through his Facebook account, which was filed on August 10, 2012.

{¶24} The record indicates appellant was eventually found in Montana and executed a waiver of extradition in that state on August 16, 2012.

{¶25} On September 14, 2012, appellant appeared before the trial court at initial appearance and entered pleas of not guilty. A jury trial was scheduled for October 22, 2012.

{¶26} On October 1, 2012, appellee filed a superseding indictment adding a third count of sexual battery pursuant to R.C. 2907.03(A)(5), a felony of the third degree.

{¶27} On October 18, 2012, appellant waived his right to speedy trial in conjunction with a motion to continue the trial, supported by appellant's assertion "counsel needs additional time to interview witnesses and to prepare for trial." The resulting Order for Continuance states the pretrial and trial dates are "to be determined" and the arraignment on the superseding indictment is October 23, 2012.

{¶28} On January 29, 2013, another superseding indictment was filed. Counts I through XXX consist of thirty counts of rape pursuant to R.C. 2907.02(A)(2), all felonies

of the first degree. Appellant entered pleas of not guilty and the matter was scheduled for jury trial on April 15, 2013.

{¶29} The matter proceeded to trial by jury. Appellant was found guilty upon Counts II and XV and not guilty of the remaining counts. Appellant was sentenced to two consecutive prison terms of 8 years each and was classified as a Tier III sex offender.

{¶30} Appellant now appeals from the April 30, 2013 judgment entry of conviction and sentence.

{¶31} Appellant raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶32} "I.   TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF MR. MARTIN'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I, OF THE OHIO CONSTITUTION."

{¶33} "II.   THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND DENIED MR. MARTIN A FAIR TRIAL AND DUE PROCESS OF LAW WHEN IT ASKED DETECTIVE GIBSON HER OPINION ON WHETHER MR. MARTIN RAPED C.M. AND PROVIDED NO CURATIVE INSTRUCTION TO THE JURY REGARDING DETECTIVE GIBSON'S ANSWER, IN VIOLATION OF MR. MARTIN'S FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION."

**ANALYSIS**

{¶34} In his first assignment of error, appellant asserts he received ineffective assistance of counsel. We disagree.

{¶35} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See*, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶36} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶37} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

*Speedy Trial Issues*

{¶38} Appellant argues defense trial counsel was incompetent in failing to move for discharge on speedy trial grounds. His argument is premised upon assertions that

appellee's dismissal of the case and subsequent re-indictment did not toll the time in which appellant was required to be brought to trial, and appellant's waiver of his right to speedy trial was ineffective. We disagree with both premises.

{¶39} It is well-established that for purposes of computing how much time has run against the state under R.C. 2945.71 et seq., the time period between the dismissal without prejudice of an original indictment and the filing of a subsequent indictment, premised upon the same facts as alleged in the original indictment, shall not be counted unless the defendant is held in jail or released on bail pursuant to Crim.R. 12(I). *State v. Broughton*, 62 Ohio St.3d 253, 581 N.E.2d 541 (1991), paragraph one of the syllabus. In this case, appellant was neither held in jail nor released on bail pending the subsequent superseding indictment and in fact fled to Montana in the interim. Upon re-indictment, the 132 days chargeable to appellee in the original case were added to the speedy-trial time. We therefore find appellant's right to a speedy trial was not violated.

{¶40} Further, we are unwilling to find defense trial counsel's time waivers in the original and subsequent cases to be ineffective under the circumstances of this case. Appellant urges us to evaluate the time waivers in a vacuum, separate and apart from the context of the entire case. Appellant knew upon the filing of the bill of particulars, if not before, appellee alleged the victim's unborn child was his; the issue remaining was whether D.N.A. testing of the child could be effectuated before or after delivery. When it became clear antenatal D.N.A. testing was too risky to the health of the 13-year-old mother and the unborn child, appellee opted to dismiss and later re-indict, wagering that appellant might disappear in the meantime. Indeed he did.

{¶41} From the perspective of appellant's defense trial counsel, however, we are equally unwilling to find counsel's acknowledged need to talk to witnesses and have additional time to prepare for trial was anything less than sound trial strategy. We note appellant does not point to any authority stating otherwise. Decisions which constitute trial strategy do not generally rise to the level of ineffective assistance of counsel. A reviewing court must adopt a deferential attitude to the strategic and tactical choices counsel made as part of a trial strategy. *State v. Griffie*, 74 Ohio St.3d 332, 658 N.E.2d 764 (1996).

*Failure to Object to Jury's Question*

{¶42} Appellant next contends defense trial counsel was ineffective in failing to object to the jury's question to the investigating detective: whether she believed appellant raped C.M., to which she answered she believed "one hundred percent" C.M. was raped.

{¶43} Upon our review of the record, we find sufficient competent and credible evidence to convince the jury appellant was guilty beyond a reasonable doubt. While defense counsel may have been arguably ineffective in failing to object to the form of this question, we find no prejudice to the appellant such that but for the statement's admission, the outcome of the trial would have been different. *State v. McArtor*, 5th Dist. Licking No. 2002-CA-00123, 2003-Ohio-5321, ¶ 14, appeal not allowed, 101 Ohio St.3d 1468, 2004-Ohio-819, 804 N.E.2d 42, citing *State v. Moritz*, 63 Ohio St.2d 150, 407 N.E.2d 1268 (1980).

*Failure to Request Sexual Battery Instruction*

{¶44} Finally, appellant asserts defense trial counsel was ineffective in failing to request a jury instruction on sexual battery pursuant to R.C. 2907.03(A)(5). We disagree.

{¶45} The 30 counts that ultimately went to the jury in this case consisted entirely of forcible rape pursuant to R.C. 2907.02(A)(2), which states, "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Appellant argues his counsel should have asked the jury to be instructed on sexual battery pursuant to R.C. 2907.03(A)(5), which states, "No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:  * * * *.  The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person." The trial court did instruct the jury on a different form of sexual battery pursuant to R.C. 2907.03(A)(1), to wit, "No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply: The offender knowingly coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution."

{¶46} Appellant argues the trial court signaled it would give an instruction on 2907.03(A)(5) because there was evidence the relationship between appellant and C.M. was in loco parentis but defense trial counsel never asked, and the failure to do so constitutes ineffective assistance. The Ohio Supreme Court has recognized "[f]ailure to request instructions on lesser-included offenses is a matter of trial strategy and does not establish ineffective assistance of counsel." *State v. Dillon*, Muskingum App. No. 2008-

CA-37, 2009-Ohio-3134, ¶ 119, appeal not allowed, 123 Ohio St.3d 1495, 2009-Ohio-6015, 916 N.E.2d 1075, citing *Griffie*, supra, 74 Ohio St.3d at 333.

{¶47} At trial, the fact of sexual contact between appellant and C.M. was not in dispute in light of the pregnancy; the question was whether the contact was forcible. A request for the in loco parentis sexual battery instruction would have assured a conviction where there otherwise might have been an acquittal had the jury found no evidence of force. See, *State v. Rich*, 5th Dist. Stark No. 2003CA00250, 2004-Ohio-4463, ¶ 63.

{¶48} We find trial counsel's failure to request a jury instruction as to the lesser-included offense of sexual battery to be a tactical decision and thus not ineffective.

{¶49} Appellant did not receive ineffective assistance of trial counsel and his first assignment of error is overruled.

II.

{¶50} In his second assignment of error, appellant argues the trial court committed reversible error in asking the detective, at the request of the jury, whether she believed C.M. had been raped. We disagree.

{¶51} As described supra, when the jury was permitted to ask questions of appellee's witness Detective Gibson, neither party objected and the following testimony was given:

> * * * *.
>
> [TRIAL COURT]:  Okay.  And do you honestly think that [C.M.] was raped?  That kind of calls for a legal conclusion but the attorneys have indicated that they are fine with me asking you that question.

[DEFENSE TRIAL COUNSEL]: I'm, sorry can you repeat the question, your Honor, we were talking?

[TRIAL COURT]: Do you honestly think that [C.M.] was raped?

[DETECTIVE GIBSON]: I believe one hundred percent that [C.M.] was raped, absolutely one hundred percent. I don't even send cases to the Prosecutor's Office that I believe there is any question. [C.M.] was absolutely raped.

* * * *.

{¶52} Thereupon both parties were given the opportunity to ask follow-up questions; neither specifically questioned the detective about this response. No curative instruction was requested or given.

{¶53} As no objection was raised, we review this matter for plain error. Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The rule places several limitations on a reviewing court's determination to correct an error despite the absence of timely objection at trial: (1) "there must be an error, i.e., a deviation from a legal rule," (2) "the error must be plain," that is, an error that constitutes "an 'obvious' defect in the trial proceedings," and (3) the error must have affected "substantial rights" such that "the trial court's error must have affected the outcome of the trial." *State v. Dunn*, 5th Dist. No. 2008-CA-00137, 2009-Ohio-1688, citing *State v. Morales*, 10 Dist. Nos. 03-AP-318, 03-AP-319, 2004-Ohio-3391, at ¶ 19 (citation omitted).

{¶54} The decision to correct a plain error is discretionary and should be made "with the utmost caution, under exceptional circumstances and only to prevent a

manifest miscarriage of justice." *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240 (2002), quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶55} These circumstances are not extraordinary and do not represent a manifest miscarriage of justice. We find the witness' conclusion she believed "100 percent" C.M. was raped to be implicit throughout her entire testimony and, as appellee succinctly states, to be "stating the obvious" in terms of her assessment of and role in the case. We find the admission of this statement did not affect the outcome of the trial such that plain error occurred.

{¶56} Appellant's second assignment of error is overruled.

## CONCLUSION

{¶57} Appellant's two assignments of error are overruled and the judgment of the Morrow County Court of Common Pleas is affirmed.

By: Delaney, J. and

Gwin, P.J.

Wise, J., concur.