[Cite as *Cleveland v. Thurman*, 2023-Ohio-301.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| CITY OF CLEVELAND, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 111410 |
| v. | : | |
| ALFONZO L. THURMAN, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND VACATED
**RELEASED AND JOURNALIZED:** February 2, 2023

Criminal Appeal from the Cleveland Municipal Court
Case No. 2021-TRC-014870

*Appearances:*

Mark Griffin, Cleveland Director of Law, and Susan M. Oates, Assistant Director of Law, *for appellee.*

The Goldberg Law Firm and Adam Parker, *for appellant.*

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant, Alonzo Thurman ("Thurman"), appeals the trial court's denial of his motion to dismiss for a violation of his constitutionally and statutorily protected speedy trial rights. For the reasons set forth below, we reverse the trial court's judgment and vacate Thurman's convictions.

## Procedural and Factual History

**{¶ 2}** On July 3, 2021, Thurman lost control of his motorcycle, he was ejected, and the motorcycle launched through a steel garage door of a business establishment. Emergency Medical Services ("EMS") responded to the scene and later transported Thurman to MetroHealth Hospital ("Metro"), where he was treated for very serious injuries.

**{¶ 3}** On that same day, the city of Cleveland (the "City") cited Thurman for operating a vehicle under the influence of alcohol or drugs, a misdemeanor of the first degree, in violation of Cleveland Codified Ordinances 431.01, and failure to control, a minor misdemeanor, in violation of Cleveland Codified Ordinances 431.34. The police "arrested" Thurman but did not take him into custody.[1]

**{¶ 4}** On July 9, 2021, the date Thurman was scheduled to be arraigned, his mother appeared on his behalf with documentation from Metro indicating that Thurman's disposition and discharge was undetermined as of July 5, 2021. His mother informed the court that Thurman was subsequently released from Metro, but had a cast on his leg, and was scheduled to return to the hospital for further surgery.

**{¶ 5}** To be discussed in the legal analysis section below, the trial court issued a journal entry indicating that the matter would be continued for a pretrial on July 21, 2021.

---

[1] Thurman was unconscious when the police arrived at Metro.

{¶ 6} At the pretrial on July 21, 2021, Thurman personally appeared with counsel, who stated that "[w]e would make a motion for discovery and request a pretrial to review evidence." The trial court granted the motion and issued a journal entry indicating that the matter was continued to August 18, 2021, for a pretrial at defendant's request.

{¶ 7} At the pretrial on August 18, 2021, Thurman requested a continuance, because defense counsel had not yet received Thurman's medical records from Metro. The trial court granted the continuance and issued a journal entry indicating that the matter was continued to September 21, 2021, for a pretrial at defendant's request.

{¶ 8} By the time of the pretrial on September 21, 2021, Metro had not yet forwarded Thurman's medical records, therefore defense counsel requested another continuance. At that time, defense counsel also requested the EMS report related to the incident. The trial court granted the continuance and issued a journal entry indicating that the matter was continued to October 12, 2021, for a pretrial at defendant's request.

{¶ 9} At the pretrial on October 12, 2021, Thurman's counsel bemoaned not receiving the medical records, despite having requested several continuances. The City indicated that it had requested the medical records but was experiencing difficulties getting Metro to respond in a timely manner. At that time, defense counsel requested that the trial court schedule the matter for a bench trial.

{¶ 10} Because the medical records had not been received, the trial court scheduled a tentative date for the bench trial. The trial court then issued a journal entry indicating that the matter was continued to November 10, 2021, for a final pretrial hearing at defendant's request. The journal entry also indicated that the bench trial was tentatively scheduled for December 1, 2021.

{¶ 11} At the final pretrial on November 10, 2021, Thurman appeared with the public defender that was newly assigned to that courtroom. Defense counsel confirmed that a bench trial had been requested earlier. The trial court subsequently issued a journal entry indicating that the trial would take place on January 12, 2022. On that date, at the request of the City, the trial court continued the bench trial to February 1, 2022.

{¶ 12} On January 31, 2022, Thurman filed a motion to dismiss and alleged that his right to a speedy trial had been violated. At a hearing the following day, the trial court denied the motion and stated in pertinent part that "[b]y our calculation, to me based on the days that Mr. Thurman was available to the Court, it looks like 89 days have expired as of today, so at this point in time, I'm not going to grant the [m]otion."

{¶ 13} After the trial court denied the motion, Thurman proceeded to plead no contest to both charges. The City detailed the facts underlying the charges. Thereafter, the trial court found Thurman guilty of both charges. On March 16, 2022, the trial court sentenced Thurman to two years of community control sanctions, imposed a fine of $1,075, but suspended $750 of that amount.

{¶ 14} Thurman now appeals and assigns the following sole error for review:

## Assignment of Error

The trial court erred in denying appellant's motion to dismiss.

## Law and Analysis

{¶ 15} In the sole assignment of error, Thurman argues the trial court erred when it denied his motion to dismiss for a violation of his rights to a speedy trial.

{¶ 16} Preliminarily, we note, "Ohio's speedy trial statute[s were] implemented to incorporate the constitutional protection of the right to a speedy trial provided for in the Sixth Amendment to the United States Constitution and in Section 10, Article I, of the Ohio Constitution." *Brecksville v. Cook*, 75 Ohio St.3d 53, 661 N.E.2d 706 (1996), citing *State v. Broughton*, 62 Ohio St.3d 253, 581 N.E.2d 541 (1991).

{¶ 17} Importantly, with limited exceptions, R.C. 2945.71(B)(2), requires

> a person against whom a charge of misdemeanor, other than a minor misdemeanor, is pending in a court of record, shall be brought to trial * * * [w]ithin ninety days after the person's arrest or the service of summons, if the offense charged is a misdemeanor of the first or second degree * * *.

As noted above, one of the charged offenses was a first-degree misdemeanor. As such, the City was required to bring Thurman to trial within 90 days. However, the time in which an accused must be brought to trial may be extended under certain circumstances.

{¶ 18} Pertinent to our discussion here, R.C. 2945.72 provides as follows:

> [t]he time within which an accused must be brought to trial, * * *, may be extended only by the following:

\* \* \*

(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion[.]

{¶ 19} "'"When reviewing a speedy trial question, the appellate court must count the number of delays chargeable to each side and then determine whether the number of days not tolled exceeded the time limits under R.C. 2945.71."'" *Warrensville Heights v. Parker*, 8th Dist. Cuyahoga No. 111375, 2022-Ohio-4507, ¶ 14, quoting *Lyndhurst v. Di Fiore*, 8th Dist. Cuyahoga No. 88654, 2007-Ohio-3538, ¶ 6, quoting *State v. Borrero*, 8th Dist. Cuyahoga No. 82595, 2004-Ohio-4488.

{¶ 20} "'"The question of whether the trial court's ruling on a speedy trial issue was correct is a mixed question of law and fact. The appellate court gives due deference to the trial court's findings of fact so long as those findings are supported by competent, credible evidence."'" *Id.*, quoting *Di Fiore* at *id.*, quoting *Borrero* at *id.* Speedy trial statutes are strictly construed against the [City]. *Cook*, 75 Ohio St.3d 53, 661 N.E.2d 706.

{¶ 21} With these principles in mind, we now address Thurman's claim that his right to a speedy trial was violated.

{¶ 22} To begin, both Thurman and the City agree that Thurman's speedy-trial clock began to run on July 4, 2021, the date following the arrest. "Generally, when computing how much time has run against the [City] under R.C. 2945.71, we begin with the day after the accused was arrested." (Emphasis omitted.) *State v.*

*Shepherd*, 8th Dist. Cuyahoga No. 97962, 2012-Ohio-5415, ¶ 17, citing *Broughton*, 62 Ohio St.3d 253, 581 N.E.2d 541. Thurman's speedy-trial clock continues to run until one of the enumerated events or circumstances outlined in R.C. 2945.72 tolls his speedy-trial time. *State v. Ramey*, 132 Ohio St.3d 309, 2012-Ohio-2904, 971 N.E.2d 937, ¶ 24; R.C. 2945.72(H).

{¶ 23} Thurman's arraignment was scheduled for July 9, 2021. Counting the day following Thurman's arrest through his scheduled arraignment, six days elapsed. As previously noted, Thurman, for medical reasons, did not personally appear at the scheduled arraignment, but his mother appeared on his behalf with appropriate documentation excusing his absence.

{¶ 24} The record reveals, the arraignment magistrate stated in pertinent part as follows: "All right. So, I'm going to enter pleas of not guilty on behalf of your son." Following a discussion at sidebar, the magistrate continued,

> So what they are requesting is that we're going to enter pleas of not guilty, and we're — we're just going to put it on for two weeks back down here. * * * For two weeks down here on this docket, so we're going to continue it. We are not going to give him a warrant — a failure to appear or anything. We are also not going to enter a plea for him.

{¶ 25} The excerpt indicated that the magistrate would enter not guilty pleas on Thurman's behalf. At the same time, the excerpt also indicated that the magistrate would enter not guilty pleas on behalf of Thurman. Ultimately, the magistrate's intentions aside, the journal entry issued, subsequent to the in-court discussion, reflected that the matter was set for a pretrial, not a continuation of Thurman's arraignment.

{¶ 26}Both parties aptly reference the longstanding tenet that "it is an invariable rule that a court speaks only through its journal, and where its opinion and its journal are in conflict the latter controls and the former must be disregarded." *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 131 N.E.2d 390 (1955), paragraph three of the syllabus; *State v. Benson*, 29 Ohio App.3d 321, 505 N.E.2d 987 (8th Dist.1985).

{¶ 27} Critically, our review of the July 9, 2021 journal entry reveals that the matter was set for a pretrial on July 21, 2021. Based on bedrock principles, the journal entry is controlling, the in-court pronouncement must be disregarded, and there was no tolling. Therefore, the net effect is that an additional 12 days elapsed from the date of the arraignment until the date of the first pretrial. Based on our calculations, at that juncture, 18 days had elapsed.

{¶ 28} As previously discussed, on July 21, 2021 when Thurman personally appeared, defense counsel requested discovery and a continuance to review the discovery. Pursuant to R.C. 2945.72(E), this continuance extended or tolled Thurman's speedy trial time. ""'[T]he most sensible interpretation of R.C. 2945.72(E) is that when a defendant requests discovery, the request operates as a tolling event.'"" *South Euclid v. Njoku*, 8th Dist. Cuyahoga No. 111363, 2022-Ohio-4388, ¶ 24, quoting *State v. Belville*, Slip Opinion No. 2022-Ohio-3879, ¶ 19, quoting *State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, 781 N.E.2d 159, ¶ 23.

{¶ 29}Neither party disputes that between the pretrial on July 21, 2021, and the pretrial on October 12, 2021, Thurman's speedy-trial clock was not running. As

previously discussed, during that time, the parties had yet to receive the medical records. However, the record reveals that Thurman requested a bench trial, which the trial court set tentatively for December 1, 2021. The trial court also set a final pretrial date for November 10, 2021, arguably with the hope that the medical records would be received.

{¶ 30} The request for a bench trial triggered the restarting of Thurman's speedy-trial clock. R.C. 2945.72(E). The speedy-trial clock continued running through and including November 10, 2021, the date of the final pretrial, December 1, 2021, the tentative date for trial, and January 12, 2022, the rescheduled date for trial. By our calculations, 63 days elapsed during this time, bringing the total number of days to 81.

{¶ 31} On January 12, 2022, the City requested a continuance, which the trial court granted to February 1, 2022. As a result, the speedy-trial clock kept running for an additional 20 days. Therefore, after counting the number of delays chargeable to each side, we arrive at a grand total of 101 days having elapsed between July 4, 2021, the day following Thurman's arrest, and February 1, 2022, the day trial was scheduled to commence.

{¶ 32} Because the City did not bring Thurman to trial within 90 days, as mandated by R.C. 2945.71(B)(2), the trial court erred when it denied the motion to dismiss.

{¶ 33} Accordingly, we sustain the sole assignment of error.

{¶ 34} Judgment reversed; convictions and sentences are vacated.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

ANITA LASTER MAYS, A.J., and
EILEEN T. GALLAGHER, J., CONCUR