[Cite as *State v. Johnson*, 2018-Ohio-2004.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

     Appellee

v.

EFREM R. JOHNSON

     Appellant

C.A. Nos.     28515
                   28822

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CR 2015 02 0453

DECISION AND JOURNAL ENTRY

Dated: May 23, 2018

SCHAFER, Presiding Judge.

{¶1} Defendant-Appellant, Efrem Johnson, appeals his convictions for rape, felonious assault, and kidnapping in the Summit County Court of Common Pleas. We dismiss the appeal in part and affirm.

I.

{¶2} On August 26, 2000, K.M. was raped, beaten, and left naked and unconscious in a wooded area. When K.M. regained consciousness, she was disoriented and could not locate her clothing. She eventually made it to a house where she was covered with a blanket and EMS was called. K.M. was taken to a hospital where a rape kit was performed and she spent several days recovering in the trauma ward.

{¶3} The rape kit and other evidence were sent to the Ohio Bureau of Criminal Investigation (BCI) for analysis in 2000. In 2010, BCI received a known DNA reference standard for Johnson and subsequently developed Johnson's DNA profile. Then, in 2015, a BCI

report determined that Johnson's DNA profile could not be excluded from the DNA collected as a part of K.M.'s rape kit.

{¶4} The Summit County Grand Jury returned a secret indictment on February 18, 2015, charging Johnson with one count of rape, in violation of R.C. 2907.02(A)(2), a felony of the first degree; one count of rape in violation of R.C. 2907.02(A)(1)(c), a felony of the first degree; one count of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree; and one count of kidnapping, in violation of R.C. 2905.01(A)(4), a felony of the first degree. The court ordered that a capias be issued to the Sheriff of Summit County for Johnson's arrest that same day.

{¶5} On June 17, 2016, Johnson filed a motion to dismiss asserting that the State was beyond the 270 days within which it was required to bring Johnson to trial pursuant to R.C. 2945.71. After a hearing, the trial court summarily denied Johnson's motion.

{¶6} Prior to trial, the State dismissed the charge of rape in violation of R.C. 2907.02(A)(1)(c). The matter proceeded to a jury trial on October 6, 2016. Johnson was ultimately found guilty of the three remaining charges.

{¶7} On December 2, 2016, the trial court filed a sentencing entry sentencing Johnson as follows: (1) on the remaining charge of rape, a non-mandatory term of ten years imprisonment, with a mandatory term of five years of post-release control; (2) on the charge of felonious assault, a non-mandatory term of eight years imprisonment, with a mandatory term of three years of post-release control; and (3) on the charge of kidnapping, a non-mandatory term of ten years imprisonment, and a mandatory term of three years of post-release control. Although the indictment identified the kidnapping charge as a felony of the first degree, the sentencing entry identified the kidnapping charge as a felony of the second degree. The trial court then

ordered the sentences to be served consecutively to each other, for a total of 28 years. The trial court further ordered that the sentence in this case be served and with the sentence imposed in a previous case, Summit County Common Pleas Case Number 2010-03-0866, for a total sentence of 28 years to life in prison. The trial court then found by clear and convincing evidence that Johnson engaged in acts which indicate he is a sexually-oriented offender and adjudicated him a sexually-oriented offender. Johnson was also ordered to pay the costs of the prosecution.

{¶8} The trial court filed a journal entry nunc pro tunc on December 5, 2016, correcting the felony level of the kidnapping charge from a felony of the second degree to a felony of the first degree.

{¶9} Johnson thereafter filed a notice of appeal of the December 5, 2016 nunc pro tunc entry. However, upon review of the initial filings, this Court concluded it was without jurisdiction to consider the attempted appeal as it was untimely. *State v. Johnson*, 9th Dist. Summit No. 28477 (Jan. 30, 2017). However, this Court stated that its journal entry did not preclude Johnson from filing a new appeal along with a motion for delayed appeal of the December 2, 2016 judgment of conviction.

{¶10} On January 10, 2017, the trial court then filed a journal entry nunc pro tunc to replace the December 5, 2016, nunc pro tunc order. Then, on January 26, 2017, the trial court filed another journal entry nunc pro tunc to correct the journal entry filed January 10, 2017, to read that the sentence in this matter was to "be served CONSECUTIVELY TO the sentence imposed in Case Number CR 2010 03 0866, for a sentence of 28 years to life in prison."

{¶11} On February 3, 2017, Johnson filed a notice of appeal of the entries dated December 2, 2016, December 5, 2016, January 10, 2017, and January 26, 2017. Johnson filed a

motion for delayed appeal from the entry dated December 2, 2016, on February 8, 2017. This Court granted Johnson's delayed appeal.

{¶12} The trial court subsequently filed a fourth entry nunc pro tunc on February 28, 2017, to correct the journal entries filed January 10, 2017 and January 26, 2017, to state that the sentence was to "be served CONSECUTIVELY TO the sentence imposed in Case Number CR 2010 03 0866, **for a sentence of 55 years to life in prison.**" Later, the trial court filed a fifth journal entry nunc pro tunc on March 24, 2017, changing the above "55 years" to "**54 years to life in prison.**"

{¶13} On October 26, 2017, Johnson filed a notice of appeal and a motion for delayed appeal of the December 2, 2016 sentencing entry as well as the nunc pro tunc entries filed December 5, 2017, January 10, 2017, January 26, 2017, February 28, 2017, and March 24, 2017.

{¶14} This Court consolidated Johnson's appeals for the purposes of the record, briefing, oral argument, and if applicable, the decision. Johnson raises three assignments of error for our review.

II.

{¶15} As an initial matter, we must determine whether the trial court's nunc pro tunc entries are properly before this Court. "A court may issue a nunc pro tunc to correct a clerical mistake in an entry so that the entry reflects what actually occurred in open court." *State v. Stevens*, 9th Dist. Summit No. 27366, 2015-Ohio-4009, ¶ 5, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 30. However, "a nunc pro tunc judgment entry issued for the sole purpose of complying with Crim.R. 32(C) to correct a clerical omission in a final judgment entry is not a new final order from which a new appeal may be taken." *State v. Lester*, 130 Ohio St.3d, 2011-Ohio-5204, ¶ 20. Therefore, as a threshold matter, we must determine if the trial court's

nunc pro tunc orders are properly before this Court, as we only have jurisdiction to hear an appeal from a final judgment. Ohio Constitution, Article IV, Section 3(B)(2); R.C. 2501.02. "In the absence of a final, appealable order, this Court must dismiss the appeal for lack of subject matter jurisdiction." *In re Estate of Thomas*, 9th Dist. Summit No. 27177, 2014-Ohio-3481, ¶ 4. R.C. 2505.02(B).

{¶16} A review of the transcript shows that the trial court imposed the following sentence on Johnson at his sentencing hearing: (1) on the charge of rape, Johnson was to be confined to the Ohio Department of Corrections for a period of ten years. The trial court further advised Johnson that once he was released from prison he would be placed on a mandatory five years of post-release control; (2) on the charge of felonious assault, Johnson was to be confined for a period of eight years, with three years of mandatory post-release control; (3) on the charge of kidnapping, Johnson was to be confined for a period of ten years, with five years of mandatory post-release control. The trial court then stated that the penalties for each offense were to be served consecutive to one another for a total of 28 years in prison.

{¶17} On December 2, 2016, the trial court filed a journal entry containing multiple clerical errors that did not reflect what the court decided at the sentencing hearing. That order states Johnson's sentence as follows: (1) on the remaining charge of rape, a non-mandatory term of ten years imprisonment, with a mandatory term of five years of post-release control; (2) on the charge of felonious assault, a non-mandatory term of eight years imprisonment, with a mandatory term of three years of post-release control; and (3) on the charge of kidnapping, a non-mandatory term of ten years imprisonment, and a mandatory term of three years of post-release control. Although the indictment identified the kidnapping charge as a felony of the first degree, *the sentencing entry identified the kidnapping charge as a felony of the second degree.*

The trial court then ordered the sentences to be served consecutively to each other, for a total of 28 years. The trial court further ordered that the sentence in this case *be served with the sentence imposed in a previous case, CR 2010 03 0866,* for a total sentence of "*28 years to life in prison.*" The trial court then found by clear and convincing evidence that Johnson engaged in acts which indicate he is a sexually-oriented offender and adjudicated him a sexually-oriented offender. Johnson was also ordered to pay the costs of the prosecution.

{¶18} A review of the record shows that the December 5, 2016 order, the January 10, 2017 order, and the January 26, 2017 order were all nunc pro tunc entries. "Where a sentencing hearing transcript makes clear what the trial court decided, the trial court has jurisdiction to correct typographical errors in a sentencing entry via a nunc pro tunc entry." *State v. Ibn-Ford*, 9th Dist. Summit No. 27380, 2015-Ohio-753, ¶ 8. First, the December 5, 2016 nunc pro tunc corrected the felony level of the kidnapping charge from a felony of the second degree to a felony of the first degree. Second, although the trial court's second nunc pro tunc sentencing entry stated that entry was intended to replace the December 5, 2016, nunc pro tunc order, a review of the order shows there is no difference between the January 10, 2017 order and the December 5, 2016 order. Third, the January 26, 2017 nunc pro tunc order corrected the journal entry filed January 10, 2017, to read that the sentence in this matter was to "be served CONSECUTIVELY TO the sentence imposed in Case Number CR 2010 03 0866, for a sentence of 28 years to life in prison." As the trial court acted within its authority in correcting the above clerical errors, we conclude that the December 5, 2016, January 10, 2017, and January 26, 2017 nunc pro tunc orders are not final appealable orders and we are without jurisdiction to review them. *See* R.C. 2505.02(B).

{¶19} Therefore, Johnson's appeal is dismissed as it relates to the December 5, 2016, January 10, 2017, and January 26, 2017 nunc pro tunc orders.

{¶20} Upon review, we further determine that the February 28, 2017, and March 24, 2017 journal entries are not final and appealable orders because they do not affect Johnson's substantial rights. The General Assembly has set forth what orders are final and appealable in R.C. 2505.02(B). That statute states, in relevant part:

> An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
>
> (1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;

R.C. 2505.02(B)(1). A "substantial right" is "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A)(1).

{¶21} The trial court's fourth "nunc pro tunc" entry filed on February 28, 2017, was intended to correct the journal entries filed January 10, 2017 and January 26, 2017, to state that the sentence was to "be served CONSECUTIVELY TO the sentence imposed in Case Number CR 2010 03 0866, **for a sentence of 55 years to life in prison.**" The trial court filed a fifth journal entry "nunc pro tunc" on March 24, 2017, changing the above "55 years" to "**54 years to life in prison.**" A review of the record shows that in Case Number CR 2010 03 0866, the trial court sentenced Johnson to a term of life imprisonment with parole eligibility after twenty years for aggravated murder, a term of three years imprisonment for having weapons while under disability, and a term of three years imprisonment for possession of a firearm. The trial court in that case ordered the sentences to be served consecutively for a total of 26 years to life imprisonment.

{¶22} As the trial court ordered Johnson's aggregate sentence of 28 years in the present matter to run consecutive to Johnson's aggregate sentence of 26 years to life imprisonment in Summit County Common Pleas Case Number CR 2010-03-0866, the trial court's February 28, 2017 and March 24, 2017 nunc pro tunc entries do not affect any of Johnson's substantial rights. *See* R.C. 2505.02(A)(1). Accordingly, those orders are not final orders subject to review. *See* R.C. 2505.02(B)(1).

{¶23} Therefore, Johnson's appeal is also dismissed as it relates to the February 28, 2017, and March 24, 2017 journal entries.

{¶24} Accordingly, the only matter before this Court is Johnson's delayed appeal of the December 2, 2016 judgment entry.

### Assignment of Error I

**The trial court abused its discretion and committed reversible error by denying the *Batson* Challenge submitted by [Johnson] in violation of the due process clause and the equal protection clause of the 14th Amendment to the U.S. Constitution and Article I, Section 2 of the Ohio Constitution.**

{¶25} In his first assignment of error, Johnson contends that the trial court erred by denying his objection to the State's use of a preemptory challenge on a potential African American juror. We disagree.

{¶26} The Equal Protection Clause of the United States Constitution prohibits deliberate discrimination based on race by a prosecutor in the exercise of peremptory challenges. *Batson v. Kentucky*, 476 U.S. 79 (1986) paragraph one of the syllabus. "A court adjudicates a Batson claim in three steps." *State v. Murphy*, 91 Ohio St.3d 516, 528 (2001). "First, the opponent of the peremptory challenge must make a prima facie case of racial discrimination. Second, if the trial court finds this requirement fulfilled, the proponent of the challenge must provide a racially neutral explanation for the challenge." *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, ¶

106, citing *Batson* at 96-98. "Finally, the trial court must decide based on all the circumstances, whether the opponent has proved purposeful racial discrimination." *Id.* "The judge must 'assess the plausibility' of the prosecutor's reason for striking the juror 'in light of all evidence with a bearing on it.'" *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, ¶ 63, quoting *Miller-El v. Dretke*, 545 U.S. 231, 252 (2005). A trial court's findings of no discriminatory intent will not be reversed on appeal unless such findings are clearly erroneous. *State v. Hernandez*, 63 Ohio St.3d 577, 583 (1992), citing *Hernandez v. New York*, 500 U.S. 352 (1991).

{¶27} In this case, the State excused three jurors for cause without objection from Johnson. One of those jurors was African American. Then, with its third preemptory challenge, the State sought to exclude Juror Number 11, the only remaining African American in the venire. Johnson objected on the basis of *Batson* and the trial court asked the State to respond. The prosecutor then stated the following explanation:

> [H]e has a history of felony criminal convictions. He expressed that he's got issues with attention, paying attention. And he also described prior experience with the situation, where he knew someone who claimed to be a victim of a sex offense and he later doubted her * * * because of subsequent conduct toward the offender.

In response, Johnson argued that Juror No. 11's "crime * * * was from 2001. He has been paying attention the whole time. He did come back late from break, but he has paid it back. I would object to this challenge." The trial court overruled Johnson's objection.

{¶28} Johnson argues that in denying his *Batson* challenge, the trial court "denied [Johnson] the right to be tried by a jury whose members are selected by nondiscriminatory criteria." However, upon review, we conclude that there is no clear error in the trial court's determination. "[A] peremptory challenge may be exercised for any racially-neutral reason." *State v. Moss*, 9th Dist. Summit No. 24511, 2009-Ohio-3866, ¶ 12. The prosecution specifically

sought to exclude Juror No. 11 because he had a history of felony criminal convictions, expressed issues with paying attention, and stated he doubted a woman's claim to be a victim of a sex offense because of her subsequent conduct toward the alleged offender. Additionally, there is no indication from the record that the State possessed a discriminatory intent when it sought to remove Juror No. 11 from the venire. Moreover, "this Court and others have recognized that "'[r]emoving a juror based on [his] past criminal history * * * is a valid, race-neutral reason for raising a peremptory challenge.""" *State v. Lewis*, 9th Dist. Summit No. 28064, 2017-Ohio-2747, ¶ 11, quoting *State v. Lacey*, 7th Dist. Mahoning No. 10MA122, 2012-Ohio-1685, ¶ 127, quoting *State v. Santiago*, 10th Dist. Franklin No. 02AP-1094, 2003-Ohio-2877, ¶ 10; *see State v. Smith*, 9th Dist. Lorain No. 96CA006331, 1998 Ohio App. LEXIS 1139, 26 (Mar. 25, 1998).

{¶29} Therefore, we conclude that the State satisfied its obligation to provide a racially neutral explanation for the challenge under the second step of the Batson analysis. Accordingly, the trial court did not clearly err when it determined that the State had a credible neutral reason for excluding Juror No. 11.

{¶30} Johnson's first assignment of error is overruled.

### Assignment of Error II

**The trial court violated [Johnson]'s right to a speedy trial in violation of his rights under the 6th and 14th Amendment to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.**

{¶31} Johnson asserts in his second assignment of error that his right to a speedy trial was violated. Although Johnson's assignment of error states his Constitutional speedy trial rights were violated, his merit brief argues instead that his statutory speedy trial rights were violated and we will limit our analysis accordingly. *See* App.R. 16(A)(7); *see also State v.*

*Powell*, 9th Dist. Summit No. 28170, 2017-Ohio-5629, ¶ 22 ("Where an appellant fails to develop an argument in support of [his] assignment of error, we will not create one for [him].").

**{¶32}** In this case, Johnson filed a motion to dismiss asserting that the State was beyond the 270 days within which it was required to bring Johnson to trial pursuant to R.C. 2945.71. In response, the State argued that the 270 days had not lapsed due to a multitude of tolling events attributable to Johnson. The State also argued, in the alternative, that R.C. 2941.401 is controlling in this case and since Johnson had not complied with the notice requirements of R.C. 2941.401, time was tolled against him. The trial court summarily denied Johnson's motion following a hearing.

**{¶33}** A trial court's determination of speedy trial issues presents a mixed question of law and fact. *State v. Fields*, 9th Dist. Wayne No. 12CA0045, 2013-Ohio-4970, ¶ 8. "'When reviewing an appellant's claim that he was denied his right to a speedy trial, this Court applies the de novo standard of review to questions of law and the clearly erroneous standard of review to questions of fact.'" *Id.*, quoting *State v. Downing*, 9th Dist. Summit No. 22012, 2004-Ohio-5952, ¶ 36.

**{¶34}** "The right of an accused to a speedy trial is recognized by the Constitutions of both the United States and the state of Ohio." *State v. Pachay*, 64 Ohio St.2d 218, 219 (1980). The United States Supreme Court has "identified four factors to be assessed in determining whether an accused had been constitutionally denied a speedy trial: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the prejudice to the defendant." *State v. Hull*, 110 Ohio St.3d 183, 2006-Ohio-4252, ¶ 22, citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972). "To that end, the General Assembly has enacted a variety of statutes that codify time limitations for bringing defendants to trial based on the nature

of the crime charged and the circumstances of the defendant." *State v. Tauwab*, 9th Dist. Summit No. 27736, 2015-Ohio-3751, ¶ 11, citing *State v. Broughton*, 62 Ohio St.3d 253, 256 (1991).

{¶35} R.C. 2945.71(C)(2) provides that a person charged with a felony must be brought to trial within 270 days of arrest. Nonetheless, R.C. 2945.71(F) states that R.C. 2945.71 shall not be construed to modify R.C. 2941.401 in any way. "R.C. 2941.401 is the statute in Ohio that governs what actions an individual incarcerated in a state prison must take to dispose of other charges pending from other courts in Ohio and how to invoke that person's speedy trial rights on those pending charges." *State v. Siniard*, 6th Dist. Huron No. H-03-008, 2004-Ohio-1043, ¶ 9. R.C. 2941.401 provides, in pertinent part, as follows:

> When a person has entered upon a term of imprisonment in a correctional institution of this state, and when during the continuance of the term of imprisonment there is pending in this state any untried indictment, information, or complaint against the prisoner, he shall be brought to trial within one hundred eighty days *after he causes to be delivered to the prosecuting attorney and the appropriate court in which the matter is pending, written notice of the place of his imprisonment and a request for a final disposition to be made of the matter*, (Emphasis added.) * * * .

> * * *

> The warden or superintendent having custody of the prisoner shall promptly inform him in writing of the source and contents of any untried indictment, information, or complaint against him, concerning which the warden or superintendent has knowledge, and of his right to make a request for final disposition thereof.

> * * *

> If the action is not brought to trial within the time provided, subject to continuance allowed pursuant to this section, no court any longer has jurisdiction thereof, the indictment, information, or complaint is void, and the court shall enter an order dismissing the action with prejudice.

"In its plainest language, R.C. 2941.401 grants an incarcerated defendant a chance to have all pending charges resolved in a timely manner, thereby preventing the [S]tate from delaying prosecution until after the defendant has been released from his prison term." *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, ¶ 25. Nonetheless, the statute does not require the state to exercise reasonable diligence to locate an incarcerated defendant and the warden or prison superintendent only has a duty to inform the incarcerated defendant of charges when the warden or superintendent has knowledge of such charges. *Id.* at ¶ 20. Rather, the statute "unambiguously impose[s] the initial duty upon the defendant to trigger action on the part of the state." *Id.* at ¶ 24.

{¶36} Thus, "[w]hen the defendant is imprisoned on a previous conviction, R.C. 2945.71 ceases to govern and the two hundred and seventy day speedy trial deadline is tolled." *State v. Stewart*, 2d Dist. Montgomery No. 21462, 2006-Ohio-4164, ¶ 21, citing *Cleveland v. Adkins*, 156 Ohio App. 3d 482, 2004-Ohio-1118, ¶ 6 (8th Dist.) and *State v. Hill*, 4th Dist. Meigs No. 96 CA 4, 1996 Ohio App. LEXIS 6097, 17; *see also State v. Skorvanek,* 9th Dist. Lorain No. 08CA009400, 2010-Ohio-1079, ¶ 19 ("In fact, R.C. 2941.401 supplants the provisions of R.C. 2945.71."). In such circumstances, "[t]he provisions of R.C. 2941.401 control, and the one hundred and eighty day speedy trial deadline under R.C. 2941.401 does not begin to run until the defendant sends written notice of the place of his imprisonment and a request for a final disposition of the matter to the prosecuting attorney and appropriate court." *Id.*

{¶37} In this case, a secret indictment and arrest warrant were issued on February 18, 2015, while Johnson was serving a life sentence imposed in Summit County Court of Common Pleas Case Number CR 2010-03-0866. On July 21, 2015, the trial court ordered the Summit County Sheriff's Office to convey Johnson from the Mansfield Correctional Facility to the

Summit County Jail, so that Johnson could be arraigned on the charges pending in this case. However, Johnson did not contend in his motion to dismiss that he complied with the mandate of R.C. 2941.401 nor does he make such a contention on appeal. Consequently, Johnson failed to trigger the speedy trial deadline of R.C. 2941.401. *See Hairston* at ¶ 20; *State v. Ondrusek*, 9th Dist. Nos. 09CA009626, 09CA009673, 2010-Ohio-2811, ¶ 12.

**{¶38}** Therefore, we conclude that Johnson's argument lacks merit. *See Hairston* at ¶ 24; *see also Siniard* at ¶ 12 ("Unless the notice and request are served on the proper prosecutor and court, R.C. 2941.401 does not impose a duty on the prosecuting official to bring the accused to trial within the time period provided.") Accordingly, the trial court did not err by denying Johnson's motion to dismiss alleging a statutory speedy trial violation.

**{¶39}** Johnson's second assignment of error is overruled.

### Assignment of Error III

**[Johnson] was denied his right to effective assistance of counsel guaranteed under the 6th Amendment to the U.S. Constitution and Article I, Sections 1, 10[, and] 16 of the Ohio Constitution. The trial court erred as a matter of law in imposing consecutive sentences upon Johnson in violation of the double jeopardy clause of the 5th Amendment to the U.S. Constitution and Article I, [Section] 10 of the Ohio Constitution.**

**{¶40}** In his third assignment of error, Johnson contends that his trial counsel was ineffective for failing to argue that the rape and kidnapping charges were allied offenses.

**{¶41}** In order to prevail on a claim of ineffective assistance of counsel, Johnson "must establish (1) that his counsel's performance was deficient to the extent that 'counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment' and (2) that but for his counsel's deficient performance the result of the trial would have been different." *State v. Velez*, 9th Dist. Lorain No.13CA010518, 2015-Ohio-642, ¶ 18, quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This court need not address both prongs of the

*Strickland* test if it should find Johnson failed to prove either prong. *State v. Ray*, 9th Dist. No. 22459, 2005-Ohio-4941, ¶ 10. A trial counsel's performance will not be deemed ineffective unless it falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus.

**{¶42}** A review of the transcript from Johnson's sentencing shows that his trial counsel did not raise the issue of whether the offenses of rape and kidnapping in this matter were allied offenses. Although Johnson himself did raise the issue, the trial court did not address his assertion except to state, "Well, sometimes they can be allied offenses, and --", before Johnson interrupted. Nonetheless, upon review of the record, we cannot say that but for counsel's failure to assert an argument that the kidnapping and rape offenses in this matter were allied the result of his sentencing would have been different.

**{¶43}** In Ohio, "R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and [Article I, Section 10,] of the Ohio Constitution, which prohibits multiple punishments for the same offense." *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 23. R.C. 2941.25 states as follows:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

"In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors—the conduct, the animus, and the import." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, paragraph one of the syllabus. "The

question of whether a victim's restraint is merely incidental to some underlying charge, such as rape, is one posed to determine animus for purposes of an allied offense analysis." *State v. Aguirre*, 9th Dist. Lorain No. 13CA010418, 2015-Ohio-922, ¶ 25, citing *State v. Logan*, 60 Ohio St.2d 126, (1979), syllabus. "Animus" in the context of R.C. 2941.25(B) means "purpose or, more properly, immediate motive." *Logan* at 131. "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Ruff* at ¶ 26.

**{¶44}** "In [*Logan*], [The Supreme Court of Ohio] established guidelines to determine whether kidnapping and rape are committed with a separate animus so as to permit separate punishment under R.C. 2941.25(B)." *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5688, ¶ 23, citing *Logan* at syllabus.

> (a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, *where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus* as to each offense sufficient to support separate convictions;
>
> (b) Where the asportation or restraint of the victim *subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime*, there exists a separate animus as to each offense sufficient to support separate convictions.

(Emphasis added.) *Williams* at ¶ 23.

**{¶45}** In this case, K.M. testified that prior to the rape she was standing in the area of Thornton Street near Roush's market. She stated that a man she had never met, later identified as Johnson, waived to her and stated, "I got what you need." K.M. understood this statement to mean he had drugs. K.M. stated that she walked a couple of blocks with the man to a park. At that point K.M. was standing in an open area and told the man she did not want to go any further.

K.M. stated that the next thing she knew, the man had hit her and knocked her unconscious. When K.M regained consciousness, the man was raping her. She stated he must have dragged her somewhere because she was in a field when he knocked her unconscious, but in a wooded area when she regained consciousness. She stated that she screamed, prayed, and tried to fight him off, but that he hit her again and she again lost consciousness. K.M. stated that when she regained consciousness again the man was gone and she was naked and bleeding. Although she could not locate her clothing, she eventually made it to a home where bystanders helped her and covered her with a blanket.

{¶46} Based on the above testimony, Johnson's restraint of K.M. was prolonged and secretive and his movement of her unconscious body was substantial. Additionally, his movement of her unconscious body from an open field to a wooded area where he left her naked and bleeding subjected her to a substantial increase of harm separate from the rape itself. Accordingly, this was not such a case where the kidnapping was merely incidental to the rape. *See State v. Rogers*, 17 Ohio St.3d 174, 182 (1985), vacated on other grounds, (concluding that a case where kidnapping was merely incidental to the rape "would be found where the only restraint involved was the holding of the victim in place while a defendant raped her.").

{¶47} Therefore, we conclude that Johnson has not shown that he was prejudiced by his trial counsel's failure to raise the issue of whether or not his convictions for kidnapping and rape were allied.

{¶48} Johnson's third assignment of error is overruled.

III.

{¶49} Johnson's appeal is dismissed in part as it relates to the trial court's nunc pro tunc entries. Johnson's assignments of error are overruled. Therefore, the judgment of the Summit County Court of Common Pleas is affirmed.

Appeal dismissed in part,
judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

HENSAL, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

PAUL GRANT, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.